WILLIAM J. HOYT, Appellant,

*vs.*

CALVIN W. HOWE, Appellee.

APPEAL IN EQUITY FROM THE ROCK CIRCUIT COURT.

A proper construction of sections 5, 51, 52, 53, 54 and 55, of chapter 102 of the Revised Statutes, makes a judgment of a court of record a lien upon all the real estate of the debtor, situated in the county, where the record or a transcript thereof is filed; and exempts from forced sale the proper quantity occupied as the homestead of the debtor.

Whenever the homestead of the judgment debtor ceases to be occupied as such by his voluntary act, or is alienated by him, the lien of the judgment may be enforced by forced sale on execution.

The effect of the exemption is, merely to prevent a forced sale of the property while it is occupied as a homestead by the debtor or his family, and if he convey it, the purchaser takes subject to the lien of the judgment. SMITH, J., *dissenting.*

The appellant in this case, a resident of the city of New York, filed his bill of complaint in the Circuit Court of Rock county, alleging that on the 6th day of September, 1852, and for some time previous thereto, one Erastus Quivey, of the county of Rock, was the legal and equitable owner of a certain piece of land in Rock county, describing the same. That the said Quivey, after becoming the owner of said premises, engaged in the mercantile business with one John W. Evans, and the two became largely indebted on claims and demands for goods purchased on credit in the city of New York, for the purpose of carrying on said business, to C. H. Norton, J. R. Butler, and the complainant, as partners in the city of New York.

The bill farther charges that the amount of indebtedness aforesaid was eight hundred dollars, justly

due to said firm of Norton, Butler & Hoyt, and that

the said Quivey proposed to convey to the complainant the premises above described, upon condition that said firm would receive the same in full satisfaction of the said claims and demands against Quivey & Evans. That in pursuance of this proposition, the said Erastus Quivey, and Sarah his wife, on the 8th day of September, 1852, conveyed by deed in fee simple, the above mentioned premises, and delivered the said deed and the possession of said premises to the complainant Hoyt; and that the said firm of Norton, Butler & Hoyt did, in pursuance of the agreement, receive the said conveyance of the premises in full satisfaction of the aforesaid claims and demands of the said firm against Quivey & Evans.

The bill further charges that at the February term, 1852, of the Rock County Court, Calvin W. Howe recovered a judgment against the said Erastus Quivey, for the sum of $244.05, upon which an execution was issued, and the aforesaid premises were levied upon and sold to the said Howe in satisfaction of said judgment.

That the said Calvin W. Howe at and before the time of the sale of said premises, had full knowledge of the right and claim of the complainant, to the said premises; and that he claimed to be the legal owner thereof. That at the time of the conveyance to the complainant, the said premises consisted of less than forty acres of land, to wit: of about three acres used for agricultural purposes, and the dwelling house thereon, being the homestead of the said Erastus Quivey, and selected by him as such homestead, and not included in any town plot, &c., and claiming that the same were not subject to forced sale on execution, on

the aforesaid judgment of Calvin W. Howe; and that the said judgment did not at any time before or after the conveyance to the complainant, of said premises, become a lien or incumbrance thereon. The bill further charges that the pretended sale of said premises under said execution, creates a cloud upon the title of the complainant, which tends to hinder and prevent a sale thereof, and concludes with a prayer that the said levy and sale to Calvin W. Howe may be set aside, &c.; that the said claim may be removed; that the said Howe may release, &c., and for general relief.

The defendant, Howe, demurred to the bill for the following causes: That it appeared by the said bill, that C. H. Norton and J. R. Butler therein named, are necessary parties to said bill, inasmuch as the conveyance of the land described, was made to the said complainant in payment of a debt due from Quivey & Evans to the said complainant, and the said Norton and Butler as co-partners, and under an agreement made between the said Quivey & Evans and the firm of Norton, Butler & Hoyt, and that they received the said conveyance to the said complainant in full satisfaction of the debt to them from Quivey & Evans, and that the said complainant holds the legal title by virtue of such conveyance, whereby they, the said Norton and Butler are equitably entitled to an undivided third part of said premises each, as tenants in common with the said complainant. But the said complainant hath not made them, or either of them, parties to his bill of complaint.

And a second cause of demurrer, is that the bill does not make such a case as ought to entitle the complainant to such relief as is prayed for, the grounds

of which are understood to be that the judgment in favor of the defendant, Howe, obtained previous to the conveyance of the premises to the complainant, Hoyt, was a lien upon the said premises, which would become efficacious, and the premises subject to sale on execution issued upon such judgment, whenever the premises should be conveyed, and cease to be occupied as the homestead of the defendant in the judgment.

The court overruled the first point in the demurrer, and sustained the second point. An order was thereupon made, dismissing the bill, from which the complainant appeals.

*D. Noggle,* for the appellant.

*J. A. Sleeper,* for the appellee.

*By the Court,* Whiton, C. J.   A majority of the court is of the opinion that the decree of the Circuit Court is right, and must be affirmed.

The case depends entirely upon the construction to be given to our statutes relative to the effect of the judgment of courts of record upon the land of the debtor, and relative to the exemption of land from forced sale on execution.   The statutes are as follows :

" All judgments hereafter rendered in any court of record shall bind and be a charge upon the lands tenements, real estate and chattels real, in every county where the record, or a certified transcript thereof, shall be filed, of every person against whom any such judgment shall be rendered, which such person may have in such counties at the time of docketing such judgments, or which such person shall acquire at any time thereafter, and such estate and chattels real

shall be subject to be sold upon execution to be issued on such judgment."

"A homestead consisting of any quantity of land not exceeding forty acres, used for agricultural purposes, and the dwelling house thereon, and its appurtenances, to be selected by the owner thereof, and not included in any town plot, or city, or village ; or instead thereof, at the option of the owner, a quantity of land not exceeding in amount one fourth of an acre, being within a recorded town plot, or city, or village, and the dwelling house thereon, and its appurtenances, owned and occupied by any resident of this State, shall not be subject to forced sale on execution, or any other final process from a court, for any debt or liabilty contracted after the first day of January, in the year one thousand eight hundred and forty nine."

" Such exemption shall not affect any laborer's or mechanic's lien, or extend to any mortgage thereon lawfully obtained ; but such mortgage or other alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same."

" Whenever a levy shall be made upon the lands or tenements of a householder whose homestead has not been selected and set apart by metes and bounds, such householder may notify the officer at the time of making such levy, of what he regards as his homestead, with a description thereof, within the limits above prescribed, and the remainder shall be subject to sale under such levy."

" If the plaintiff in execution shall be dissatisfied with the quantity of land selected and set apart as aforesaid, the officer making such levy, shall cause

the same to be surveyed, beginning at a point to be designated by the owner, and set off in a compact form, including the dwelling house and its appurtenances, to the amount specified in the fifty-first section of this chapter ; and the expenses of such survey shall be chargeable on the execution, and collected thereupon, if it shall appear after such survey that the owner of said land did not correctly state his metes and bounds, otherwise the expenses of survey shall be borne by the person directing the same."

" After the survey shall have been made, the officer making the levy may sell the property levied upon and not included in the set off, in the same manner as provided in other cases for the sale of real estate on execution, and in giving a deed of the same, he may describe it according to his original levy, excepting therefrom by metes and bounds, according to the certificates of survey, the quantity set off as aforesaid." (*Rev. Stat. chap.* 102, *Sec.* 5, 51, 52, 53, 54, 55.)

Without attempting to discover a recondite meaning in these provisions, but viewing them according to their plain and manifest import, we think that they make a judgment of a court of record, a lien upon all the real estate of the debtor, situated in the county where the record, or a transcript of it is filed, and exempt from forced sale, a quantity of land, it being the homestead of the debtor, varying from a quarter of an acre to forty acres ; the quantity depending upon the place where the land is situated and the uses to which it is applied. They provide a mode by which the quantity of land exempted from forced sale shall be ascertained when the plaintiff and the defendant do not agree, and that a mortgage or other alienation of the land shall be invalid without

June Term 1854.

Hoyt
vs.
Howe.

the signature of the wife to the same, when the owner of the land is a married man. This, as the matter appears to us, is a fair synopsis of the principal matters contained in the statutes above cited.

We are asked by the appellant to go further, and hold that the property is exempted from forced sale after it has ceased to be the homestead of the debtor; and to accomplish this object we are called upon to decide that the judgment never becomes a lien upon the land reserved for the homestead, or which shall finally be selected by the debtor as such. We think we are called upon to go this length, for we cannot think that if the lien attaches, we can hold it exempt from forced sale when it ceases to be the homestead. We of course, do not intend to hold that if the dwelling house, situated upon the homestead, and forming a part of it, should be consumed by fire, or should by any accident become untenantable, it would at once lose its character, and become subject to sale. But we speak of cases like the present, where the land ceases to be the homestead of the debtor by his lawful act, and with his full consent.

In such cases we think it clear, that if the lien attaches, and the effect of the statutes above recited is merely to exempt the homestead from forced sale, the property becomes subject to sale like any other property of the debtor. To hold the contrary would be to maintain that property which is bound by, and subject to a judgment, and only exempted from sale to satisfy the judgment, by means of its peculiar character, when it loses its character with the consent and by the act of its owner, is nevertheless still exempted from sale. We are not aware of any legal principle, nor of any fair mode of reasoning which

can be resorted to for the purpose of establishing this conclusion.

We are therefore obliged to consider the case as turning upon the question, whether the lien created by the judgment does attach to all the land of the debtor, and whether the exemption spoken of in the statute is what its language plainly imports, an exemption merely from forced sale.

It will be seen that the fifth section of chapter one hundred and two of the Revised Statutes, above recited, in terms makes the judgment a lien upon all the land which the debtor owns at the time of docketing the judgment in every county where the record or a transcript of it is filed, and all which he shall acquire afterwards, and provides that it may be sold on execution, while section fifty-one of the same chapter, provides that the homestead shall not be subject to forced sale on execution, or any other final process. What is the fair interpretetion of these provisions? Viewing them together do they mean that the lien shall not attach to all the land which the debtor owns, his homestead included? or do they mean simply what their language imports, that while the lien attaches by virtue of the fifth section, to all the land of the debtor, the part not included in the homestead, only can be sold. In order to hold that the lien does not attach to the homestead, it must be established that that part of section five which provides for it, is modified by section fifty-one, so as to produce that effect. But the special provision contained in this section, in relation to the homestead, only exempts it from forced sale ; it does not by its terms nor its spirit, at all affect section five, except that part of it which provides for a sale of the debt-

or's land. That part which makes the judgment a lien upon the land is entirely compatible with section fifty-three, and by all the established rules of construction is unaffected by it.

The counsel for the appellant contends that the husband and wife (when as in this case, the debtor has a wife) are joint owners of the homestead, and that consequently it cannot be taken to pay the husband's debts.

This position is attempted to be supported by a reference to the fifty-fifth section above recited, which provides that a mortgage or other alienation of it shall not be valid without the signature of the wife.

We do not think that this section tends to maintain this position. On the contrary, we think that it tends to establish the opposite conclusion, as it seems to recognize the husband as the owner of the land, but to make his conveyance of it invalid without the consent of the wife, evidenced by her signature.

In disposing of this case, we have not felt at liberty to discuss the policy of our exemption laws, but simply to administer those which are upon the statute book, according to their obvious and fair import. If it shall be thought necessary to give the debtor the power to sell his homestead and convey a good title to his grantee, free from the effect of judgments which may exist against him, the legislature is competent to give him this power, but we cannot disregard the established rules for the construction of statutes, in order to accomplish this object.

We have not thought it necessary to notice the objection taken to the bill of complaint by the appel-

lee, arising from an alleged want of the proper parties complainants.

The decree of the court below must be affirmed.

SMITH, J., *Dissenting*. I feel it my duty not to allow this case to pass with a merely silent dissent on my part. As I cannot place the same construction upon the several provisions of the statute to which reference has been made, and which control the decision of this case, as my brethren have felt compelled to do, it is probably better that I should state a few of my reasons, so that if further legislation be necessary to promote and secure the objects of the statute, attention may be directed to the subject.

In order to arrive at the intention of the legislature in the passage of the statute in question, it is proper to refer to the history of the homestead provision. The first Constitution which was presented to the people of this State (then territory) contained a provision securing to the debtor, from forced sale, a homestead. This provision was most thoroughly discussed before the people, and although that provision, in the form in which it was proposed, fell with the rejected Constitution; yet the next convention called immediately thereafter, not only recognized the principle of exemption, but made it mandatory upon the legislature to provide " wholesome laws exempting a reasonable amount of property from seizure or sale, for the payment of any debt or liability hereafter contracted." No former contracts were to be interfered with ; but after the passage of such laws, all contracts would be made in view of the exemption allowed, and without any hope or expectation of making the property thus exempted, a re-

49*

source out of which fulfilment of the contract could be enforced ; and no reliance could be placed upon any interference with the personal liberty of the debtor; for imprisonment for debt was abolished, or rather prohibited, by the Constitution. The principle of exemption was therefore made, a fundamental article, and recognized as one among the primary rights of the citizen to be protected and secured. It would seem, therefore, that all legislation in compliance with this constitutional provision, should be liberally construed, in view of the objects sought to be accomplished.

That portion of chapter 102 of the Revised Statutes, under the head "of exemption of property from execution," &c., was doubtless enacted in obedience to the mandate of the Constitution before referred to, and comprises sections 51 to 57, both inclusive.

Section 5, of chapter 102, provides as follows : "All judgments hereafter rendered in any court of record, shall bind, and be a charge upon the lands, tenements, real estate and chattels real, in every county where the record, or a certified transcript thereof shall be filed, of every person against whom any such judgment shall be rendered, which such person may have in such counties, at the time of docketing such judgments, or which such person shall acquire at any time thereafter, *and such estate and chattels real, shall be sold on execution, to be issued on such judgment.*"

Here the power to sell on execution is co-extensive with the lien created. Both, it must be remembered, are creations of the statute. At common law judgments are not liens upon real estate, nor at common law could real estate be sold on execution. The same statute that creates the lien, gives also the power

to sell. Whenever and wherever the statute extends the lien, it declares that such lands and chattels real, that is, all those on which the lien can fasten, may be sold on execution. Both are statutory and reme- dial provisions, created by the same section and go hand in hand. Had the power to sell real estate on execution existed at common law, and this statute been passed to create a lien the better to secure the property during the process of issuing and levying execution, there might perhaps be some reason for giving a wider scope to the lien, than to the immediate power to sell. But such is not the case.

Section 51 of the same chapter provides : " A home- stead consisting of any quantity of land not exceed- ing forty acres, used for agricultural purposes, and the dwelling house thereon and its appurtenances, to be selected by the owner thereof, and not included in any town plot, or city, or village, or instead thereof, at the option of the owner, a quantity of land not exceeding in amount one fourth of an acre, being within a recorded town plot, or city or village, and the dwelling house thereon and its appurtenances, owned and occupied by any resident of the State, *shall not be subject to forced sale on execution, or any other final process from a court, for any debt or liabil- ity contracted after the first day of January, in the year one thousand eight hundred and forty-nine.*"

Now in view of the constitutional provision above referred to ; in view of the history which led to its adoption ; and in view of the various provisions of the statutes and of the order in which they are ar- ranged, can we fail to perceive that the real intent and object in adopting the Constitution in this re- spect, and of the legislature in enacting the statute

under consideration was, that the homestead should be considered by all parties thereafter, in the management of business, in the making of contracts, in the giving of credit, &c., as a sacred thing, independent and apart from the incidents of trade and the casualties of business? Can it be possible, that in view of the conflict of opinion which had led to the final adoption of the principle of exemption, the legislature should so have arranged its details, as to make the homestead of the unfortunate debtor his prison ; that the beneficent intention of the Constitution and the law enacted in conformity therewith, was only an ingenious device to confine all the energies of the man to the narrow limits of his homestead? That *there* he must for all coming time, confine his energies, or at least, *that* must be forever the small center around which he must move continually, and which could at best afford him an exceedingly circumscribed orbit? for as soon as he should change his quarters, the fangs of a judgment lien held in reserve and masked by the law, would fasten upon his home What is this more or less than substituting the homestead for the old prison limits, mitigated only in form ?

I do not, by any means, wish to be understood as saying that the construction which has been put upon the several provisions of the statute under consideration was intended to, or necessarily has, this effect; but it is difficult for me to avoid the conclusion that such is necessarily the consequence of such construction.

If the lien of a judgment creditor necessarily fastens upon the homestead of the debtor, he is unavoidably riveted to that particular locality, unless he foregoes the advantages of the statute ; unless he abandons

all those advantages by removing elsewhere, or remains to enjoy them at the sacrifice of that manly enterprise and energy, which it was the beneficent object of the Constitution and the law to preserve for the benefit of the individual, the family, and above all, the State.

Again, the husband cannot mortgage the homestead thus secured to him by the statute, without the consent and joining of his wife. But if the construction here assumed be correct, he can contract debts; judgments can be recovered against him; nay, he may, without the consent of his wife, at any time confess judgment, and if such judgment, be a *lien* upon the homestead, all the safeguards of the statute are made to depend upon the locomotive caprice or necessity of the husband on the one hand, or his inability to obtain credit or contract debts, on the other. If a mortgage cannot become a lien without the consent of the wife, it is difficult to perceive how a judgment rendered upon a debt to which the wife never assented, can be a lien upon the homestead in which the statute gives her such a peculiar interest, as she is under the control of her husband, and by refusing to abandon the homestead with him at his request or command, might subject herself to a charge of desertion, in addition to a thousand other evils.

I barely give utterance to these suggestions, not merely as reasons why I cannot concur in the opinion of a majority of the court just rendered, but also to suggest to the law-making power a few reasons why, if the present legislation be defective, it should be remedied.

I would have concurred in the judgment of the court if I could. I would have silently dissent

ed if I could have thought my duty could have been so discharged. It has seemed to me, however, after much reflection, that I ought to enter on record the suggestions which I have above made, not as an argument to sustain the view I have taken of the statute, but to invite further legislation, if what we have now is not adequate to the end sought to be accomplished.