## Fogg *v.* Fogg.

While a debtor was in the act of moving into his dwelling-house, with a design to occupy it as the family homestead, and having no other real estate, the plaintiff, his creditor, attached it upon mesne process, and the debtor completed the moving in on the next day, and has ever since occupied it as the family home. The plaintiff afterward obtained judgment in the suit, and extended his execution upon the whole property; and although due application was made to the officer, he refused to set off a homestead.—*Held,* that the property must be regarded as the family homestead at the time of the attachment, and that although it exceeded in value the amount exempted by the law, the duty of the sheriff upon such application was imperative, and he had authority to extend the execution only upon the surplus, after setting off the homestead in the manner prescribed by the statute, and therefore that the extent was wholly void as against this defendant, the debtor.

Writ of Entry, brought by Hilliard Fogg against Andrew J. Fogg, to recover possession of a lot of land, with the buildings thereon, situate in Pittsfield, which

Fogg *v.* Fogg.

had been set off to the plaintiff upon an execution against the defendant. The defendant claimed to be entitled to retain the occupation of the demanded premises as his family homestead, notwithstanding the levy of the plaintiff's execution against him thereon, the defendant and his wife having demanded of the officer having the execution, at the time of the levy thereof on the demanded premises, that he should set out and assign to them from said premises a family homestead, of the value of $500, agreeably to the provisions of the statute, and the officer having refused to set out and .assign to them any such homestead upon receiving from the plaintiff an indemnifying bond.

The facts upon which the defendant relied, as entitling himself and wife to a family homestead, appear as follows :

Andrew J. Fogg bought the lot of Richard W. Ring, March 4, 1856, and built a house and stable upon the premises. The premises were attached by this plaintiff, October 22, 1856, on which day the defendant was moving into the house, had put down a carpet, set up a stove, had moved in some chairs, and calculated to finish moving in that day. The house was finished inside and out, and painted; had been painted about three weeks, and was in a condition to be occupied. The price of the lot was $300. The buildings cost about $1300. The note given for the lot of land was as follows :

"For value received I promise to pay Richard W. Ring, or his order, three hundred dollars, on demand, and interest. (Signed) A. J. Fogg.

HILLIARD FOGG,

"Pittsfield, March 4, 1856." Surety."

Hilliard Fogg paid the note to Ring in a month or two after he attached the house, and the note is not included in the judgment against A. J. Fogg.

The goods which were in the house had been moved in before the day on which the attachment was made.

The defendant did not move in any thing more that day, but finished moving the next day, and has ever since occupied the premises; the reason of his not finishing moving in on the day of the attachment being because the attachment was made, and the defendant was engaged about that matter. The defendant had the keys at that time, and always has had them.

The defendant built the premises for the purpose of occupying them himself with his family, and had no other real estate. The plaintiff attached the premises at the time when he did, for the purpose of preventing the defendant acquiring a right of homestead therein by actual occupancy.

It was agreed that if, upon the foregoing facts, the court shall be of opinion that the defendant was entitled to a family homestead, and that the refusal of the officer levying the execution to set it out when demanded, so invalidated the levy as to render it void, or that the right of the homestead, if it existed, can be urged to defeat this action, notwithstanding the levy, judgment should be rendered for the defendant; otherwise for the plaintiff.

*Butters & Goodwin*, for the plaintiff.

*L. W. Clark*, for the defendant.

BELLOWS, J. At the time of the extent the estate was clearly the family homestead; and it is not certain that the question would not, in the absence of fraud, be determined by its condition at that time, instead of the time of the attachment; which merely fixes a lien, giving a right to the creditor to satisfy his judgment as against subsequent attaching creditors and purchasers, but confers no title. *Freeman* v. *McGaw*, 15 Pick. 82.

In the case of the redemption of a mortgage existing at the time of the attachment, but redeemed before the levy, or where the property between the attachment and the levy

had ceased to be the homestead, its condition at the time of the levy and extent would doubtless be the guide ; and so it would be in respect to value, when the land is set off to the creditor.

But we do not propose to determine this question, as we are of the opinion that the property must be regarded as the homestead at the time of the attachment.

The plaintiff then owned it; he had no other real estate ; the buildings were erected by him for the purpose of being occupied as the family home, and just completed and ready for his family. He had commenced moving in before the attachment, and had already got in a substantial part of the family furniture, and was proceeding with the work, with the design to finish it that day, but was interrupted by the attachment, and did not complete it until the next day, and he has ever since occupied the premises.

Under these circumstances we may well consider the plaintiff in the occupation of the land demanded, as the family homestead at the time of the attachment. To give this occupation that character, it is not necessary that the debtor should constantly be dwelling therein with his family. A temporary absence, after such occupation had commenced, could not affect it. It is enough if it be designated and set apart as such home, and is in his actual occupation as such. And this may be regarded as commenced with the moving in of the family furniture, with the design to move in the family at the same time, all constituting in fact one and the same act. And we see no ground for holding that until the act was fully completed by the entry of the family, it had not become the family homestead. For by the setting up of his furniture, with the purpose of immediately bringing in his wife and children to live there, he must be regarded as having taken possession of the property as the family homestead. Had the purpose been to move in the family at another

time, so as to take from the whole the character of a continuous, single act, the conclusion might be different, though it is not necessary now to determine that question. It is sufficient that in our view the case before us comes within the scope and policy of the law upon this subject.

The only remaining question is whether the extent is valid. By law the family homestead of the head of each family is exempt from attachment, levy or sale on execution, provided it does not exceed in value the sum of $500. And section 3d of the same act provides a mode of determining the value and assigning the homestead, by which the sheriff having the writ of execution, shall, on application of the debtor or his wife, cause a homestead, such as the debtor may select, to be set off to him by three appraisers, selected by the debtor, creditor and himself.

In this case, the estate was the family homestead, and due application was made to the sheriff having the writ of execution, but he declined to cause a homestead to be set off to the debtor ; and the inquiry is, whether the extent can be sustained, notwithstanding such refusal.

It is clearly the duty of the sheriff to make the assignment. It is expressly so provided in the statute, and no other mode of doing it is prescribed. It is true, it has been held that when no application was made to the sheriff to assign the homestead, the right to it could not be regarded as waived or lost, but that other proceedings may be instituted to obtain an assignment of the homestead, at least by the wife after the death of the husband ; *Norris* v. *Moulton,* 34 N. H. 392 ; *Fletcher* v. *State Capital Bank,* 37 N. H. 369 ; the court having held that the nature of the provisions of the act is such as to exclude the idea that the remedy provided was to be the only one. But in this case, application having been made, all the circumstances exist which make it imperative on the sheriff to set out the homestead. The object of the law was to exempt the homestead altogether from attachment and execution, if

Fogg v. Fogg.

it did not exceed in value the sum of $500; and if it did exceed that sum, to provide a cheap, expeditious and summary mode of determining its value, and setting out the homestead, and all with the view of leaving the debtor in the undisturbed enjoyment of the family home.

Section third further provides for the return of the execution and of the assignment of the homestead, to the court; and in case no complaint is made by either party, no further proceedings shall be had against the homestead, but the remainder of the land, if any there be, shall be subject to the execution, with a further provision, that, for good cause shown, the court may order a reäppraisement of the homestead by the same or other appraisers, appointed by the court, under such instructions as the court shall give. Section fourth provides that if the homestead be a house that, in the opinion of the appraisers, cannot be divided without injury and inconvenience, they may appraise it, and if the debtor shall not, on notice, pay the surplus beyond $500 in sixty days, the property may be sold at auction, and the $500 paid the debtor, and the surplus applied on the execution, or so much of it as may be needed, with provision that no sale shall be made unless for a sum greater than $500.

There is, we think, nothing in the nature of these provisions, or in the language in which they are expressed, that will admit a construction that would give the sheriff the right, after due application, to set off the entire estate. Such a course might subject the debtor and his family to expulsion from the homestead, and drive him to a more tedious and expensive remedy by a bill in equity or other process. Such, clearly, we think could not have been the intention of the legislature, and we are disposed to hold that the purposes of the law will be best promoted by declaring the extent, under circumstances like the present, to be void. The general object of the law is like other laws exempting property from attachment and execu-

tion, with further provisions in favor of the wife and children of the debtor, by the force of which they may, under certain circumstances, acquire an interest in the homestead. As to the wife and children, their interest is justly regarded as inchoate, but as respects the debtor himself, in whom the estate is already vested, the law was designed to exempt the homestead altogether from attachment and execution.

It has been suggested that the remedy of the debtor is by suit against the sheriff for damages. But the answer to that is, that the sheriff has by law no power to extend an execution upon the homestead, it being expressly exempt from both attachment and execution. As respects the debtor, then, the extent must be deemed inoperative and void. As to the homestead, when it does not exceed in value $500, it must be clearly so ; and if it do exceed that value, the sheriff, upon due application, should cause a homestead to be assigned, and then proceed against the surplus. On this point he has no discretion ; his duty is imperative, and he might as well sell at auction land which is not under mortgage or other incumbrance. This summary mode of determining and setting out the homestead is wisely provided by law, and the debtor has an interest in it which no sheriff can disregard. If the homestead is worth more than $500, how much shall be set off to him is to be determined at once by suitable appraisers. If, in their judgment, it cannot be divided, they may appraise it, and the debtor, by paying the excess beyond $500, may retain the whole, otherwise the sheriff may sell the whole, if it bring over $500, and pay that sum to the debtor. Again, if the sheriff is permitted to disregard the plain provisions of the law, and his extent is to be deemed valid, the debtor and his family are expelled from their home, and obliged to resort to a remedy which is manifestly inadequate ; and this is the doctrine of *Pinkerton* v. *Tomlin,* 22 Geo. 165, where the land

Fogg *v.* Fogg.

was by a similar law made "free and exempt" from execution.    18 U. S. Dig. 359, sec. 45.

Another question may be suggested, and that is, whether the extent can be held void as to the homestead, and good as to the excess, or surplus.    To do this, we must assume that the sheriff, acting under the direction of the creditor, may deprive the debtor of the remedy given him by the statute, and compel him to seek for another, and necessarily a more expensive and tedious one.    And the same objection exists that was before urged, namely, that the sheriff has no authority to act, except in the mode pointed out in the statute.    Besides, a very serious question arises, whether any remedy could be found in accordance with any known form of proceeding.

Can it be by a defence to this suit? and if so, by what form of plea?    Can he disclaim, or plead non-tenure as to all but $500 worth of the land?    If so, is the value at the time of the extent or at the filing of the plea to govern, and in what way is the part disclaimed to be described?    It is clear that it cannot be by metes and bounds, or by any description that will inform a sheriff what to deliver, nor can he describe it as an undivided part of the whole, for the value of the whole is not known.    He cannot, then, by any known rules of pleading, defend this suit, if it be assumed that the extent is valid in whole or in part.    If it be said that by a bill in equity the debtor may stay this suit, and compel the creditor and sheriff to do what ought to have been done in the first place, that is, to set out the homestead, the question at once arises, suppose it could not be divided, how shall the debtor get the whole, by paying the excess, or the sheriff sell the whole if the debtor does not pay the excess.    Such proceedings we think would be altogether anomalous when the sheriff has wholly departed from the authority given him by the statute.    If no defence can be made to this suit, assuming the extent to be valid, would not the judgment be conclu-

sive against the debtor in any other form of suit ? If not, we can conceive of no reason for it, unless it be that the debtor has now no interest in the land, which we think cannot be successfully argued. In other jurisdictions the views we have expressed are recognized. In *Gray* v. *Estabrook*, 6 Cal. 457, a sheriff sold under an execution the debtor's interest in a tract of land beyond the homestead of $5000 in value, it having been ascertained by appraisal to be worth more, and the debtor having elected that the surplus should be sold, the sheriff sold the said " excess, in value over $5000." On ejectment to recover the possession and for mesne profits by the purchaser against a person showing no title, it was held that he could not recover, because the interest conveyed to him was undefined and uncertain, and that the whole ought to have been appraised, and an exact fractional part ascertained. So in *Hoyt* v. *Howe*, 3 Wis. 752 ; 17 U. S. Dig. 302, it was held that only so much as is not included in the homestead can be sold in execution ; and see *Rhodes* v. *Chase*, 2 Gray 383, and remarks of *Shaw*, C. J., which apply forcibly to the difficulty of determining what is the excess beyond the $500. So, when the description in a writ was two hundred and fifty-one acres, part of a tract called Resurrection Manor, which was shown to contain four thousand acres, it was held bad, not being such that the sheriff could know what to deliver. *Fenwick* v. *Floyd's Lessee*, 1 Har. & Gill 172.

As against this defendant, then, the extent must be regarded as wholly inoperative and void. Any other conclusion would be a repeal of the statute so far as respects the remedy and mode of proceeding, and give to the sheriff the power to disregard the plain provisions of the law, and leave the debtor to seek a remedy uncertain, expensive and inadequate.

There must, therefore, in accordance with the provisions of the case, be *Judgment for the defendant.*