### KELLERMAN v. AULTMAN and others.

*(Circuit Court, D. Nebraska. May 12, 1887.)*

1. JUDGMENT—LIEN—DATE WHEN ATTACHES.

   An owner of land occupied it as a homestead from 1873 to January 17, 1883, on which date he conveyed it to another person. On February 4, 1883, during the January term of the court, a judgment was rendered against him in a suit begun in 1882. *Held,* that under Code Civ. Proc. Neb. § 477, by which a judgment is made a lien upon land from the first day of the term at which the judgment is rendered in all cases where the action is commenced at a term of court prior to that in which the judgment is entered, the lien of the judgment was carried back to the commencement of the January term, 1883, and took priority in date over the conveyance.

2. HOMESTEAD—ABANDONMENT—JUDGMENT—DORMANT LIEN.

   Under the homestead exemption law of Nebraska of 1875, (Sess. Laws Neb. 1875, p. 45,) section 1 of which enacts that the homestead exemption shall exist "so long as the same shall be owned and occupied by the debtor as such homestead," a judgment against the owner of land is a lien which remains dormant while the land is occupied as a homestead, but it becomes living and operative as soon as by conveyance or otherwise the homestead occupation is abandoned.

3. SAME—EXTENT OF RIGHT.

   The Nebraska statute of 1877, which, without in terms repealing the existing law, provided that the homestead of every family should be exempt from judicial sale where there was no special declaration of the statute to the contrary, did not supersede the provision of the prior statute which limited such exemption to the duration of the homestead occupation.

In Equity. Bill to restrain sale of lands in execution.

BREWER, C. J. This case is submitted on demurrer to the bill. The facts as alleged are briefly as follows: From 1873 to 1883 one Van Slyke owned and occupied the land levied upon as his homestead. January 17, 1883, he conveyed the land to the plaintiff's grantor. The lands exceeded in value $2,000. The judgment of *Aultman* v. *Van Slyke*, was obtained on notes, dated on October 1, 1878, in a suit commenced October 31, 1882, in which summons was served November 3, 1882, answer filed December 4, 1882, and judgment rendered February 4, 1883. This judgment was at the January term, 1883; the term commencing on the first Monday in January, 1883, and before the conveyance above referred to, to plaintiff's grantor. At the time of filing this bill execution had been levied upon the land under the judgment above stated, and this action is brought to restrain such sale.

Three questions arise:

*First.* Did the fact that the judgment was not rendered until after the conveyance by Van Slyke, the judgment debtor, prevent it from be-

coming a lien? Section 477 of the Code of Civil Procedure reads as follows:

"The lands and tenements of the debtor within the county where the judgment is rendered shall be bound for the satisfaction thereof from the first day of the term at which the judgment is rendered; but judgments by confession and judgments rendered at the same term at which the action is commenced shall bind such lands only from the day on which such judgments are rendered."

As the action in which the judgment of *Aultman* v. *Van Slyke* was rendered was commenced before the January term, the plain import of the language of this section carried the judgment lien back to the first of the term, and to a date before the conveyance of Van Slyke. This section is identical with those found in the statutes of Ohio and Kansas, and has by the courts of those states, as well as of this, received a uniform construction. *Bank* v. *Baldwin*, 3 Ohio, 65; *Jackson* v. *Luce*, 14 Ohio, 514; *Davis* v. *Messenger*, 17 Ohio St. 231; *Kiser* v. *Sawyer*, 4 Kan. 503; *Miller* v. *Finn*, 1 Neb. 294; *Colt* v. *Dubois*, 7 Neb. 393. In this last case the court uses this language:

"The rule will not be questioned that, under our statutes relating to judgment liens, all judgments rendered during the term in actions commenced prior thereto are liens on all the lands of the debtor within the county from the first day of term."

These authorities, especially those from the supreme court of this state, construing the effect of one of its statutes, puts the question at rest.

The second question is this: Conceding that the judgment was no operative lien so long as Van Slyke continued in the occupation of the premises as a homestead, did it become living and operative at the time it ceased to be his homestead? This is a matter depending entirely upon the statutes of Nebraska, in whose construction it is the duty of this court to follow the decision of the supreme court of the state. That the matter of exemption is determined by the law in force at the time of making the contract, is in accordance with the general rule prevailing in respect thereto affirmed by that court in *Dorrington* v. *Myers*, 11 Neb. 388, 9 N. W. Rep. 555. The contract upon which the judgment was rendered was entered into in 1878.

In 1875 the legislature passed a homestead exemption statute, (Sess. Laws 1875, p. 45.) The first section, defining the extent of the exemption, provides for such exemption "so long as the same shall be owned and occupied by the debtor as such homestead." Construing that statute, the supreme court has held that a judgment is a lien upon a homestead, dormant while the homestead continues, but living and operative so soon as by conveyance or otherwise the homestead occupation is abandoned. *Bank* v. *Carson*, 4 Neb. 501; *Dorrington* v. *Myers, supra.*

In 1877, by an act approved February 13th, the legislature amended said section 1 of the act of 1875, but did not by such amendment repeal or modify the provisions as to the duration of the homestead exemption. Of course the same construction would still have to be put upon the statute, and if that was the entire legislation of the year there would be

no room for question. But, on the nineteenth of February, six days thereafter, the legislature enacted a new statute, which, not in terms purporting to repeal any existing legislation, was taken largely if not entirely from the statutes of Iowa.

In *Lamb* v. *Shays*, 14 Iowa, 568, the supreme court of that state had construed its statute as authorizing a judgment debtor to convey his homestead free from the lien of a judgment; and the complainant rests upon the familiar doctrine that where one state adopts the statute of another it adopts it with the settled construction placed upon it by the supreme court of the state from which it is taken. I do not find that the supreme court of Nebraska has passed upon the question now presented; perhaps may never have to, as in 1879 the homestead law was substantially changed. I do not doubt the force of the rule upon which complainant rests, but am constrained to think it not operative in this case. The first section of the act of February 19, 1877, reads: "That where there is no special declaration of the statute to the contrary, the homestead of every family, whether owned by the husband or wife, is exempt from judicial sale." In Iowa there was no other statute, and of course full and sweeping force was given to this broad language by the supreme court of that state; but in Nebraska there was a statute, not in terms repealed by this act, which limited the homestead exemption to the duration of the homestead occupation, and by which a judgment remained a lien though dormant during such occupation. There was therefore within the terms of this section a special declaration of the statute to the contrary; one limiting the sweeping effect of its general language. A similar observation may be made upon a subsequent section upon which the supreme court of Iowa placed much stress, to-wit, the one authorizing a debtor to change the limits of his homestead by changing metes and bounds, or to change it entirely, for the section contains this proviso, that "such changes shall not prejudice conveyances or liens made or created previously thereto:" Now, if, as held by the supreme court of Nebraska, a judgment is a lien upon the homestead, dormant only while the homestead continues and springing into life and force when the homestead occupation is abandoned, then this section authorizing a change of homestead must by its terms not prejudice this judgment lien. I think, therefore, the abandonment of the homestead by Van Slyke operated to revive the dormant lien of this judgment.

It follows, therefore, without considering the third question, that the demurrer to the bill must be sustained. If complainant thinks she can make a better case she may take leave to amend her bill by the July rules.