Argued May 5, decided June 28, rehearing denied December 27, 1910.

# HANSEN v. JONES.

[109 Pac. 868.]

HOMESTEAD—EXEMPTIONS—STATUTES.

1. Where a statute exempts a homestead from sale under execution, a judgment obtained against a homestead debtor after the acquisition of the homestead right, will not create such a lien on the homestead as can be enforced, while it retains its homestead character in the hands of the debtor.

JUDGMENT—JUDGMENT LIENS—STATUTES.

2. The right to a judgment lien is statutory.

HOMESTEAD—STATUTORY RIGHT.

3. The right to a homestead is statutory.

HOMESTEAD—JUDGMENT LIEN—STATUTES.

4. Section 205, B. & C. Comp., providing that a judgment from the date of its docketing or transcript shall be a lien on all the real property of defendant within the county or counties where the judgment is docketed, or which he may subsequently acquire therein, during the time that execution may issue thereon, enacted in 1862 prior to the statute creating a homestead exemption, must be given full effect, unless the statute creating the homestead exemption expressly withdraws a homestead from the operation of the lien of a judgment, or unless the subject-matter of the latter act is so in conflict with the former statute that both cannot be operative.

HOMESTEAD—EXEMPTIONS—STATUTES.

5. Section 221, B. & C. Comp., providing that the homestead of any family shall be exempt from judicial sale for the satisfaction of any liability subsequently contracted, etc., creates a personal right of exemption to be claimed as required by Section 224, when an officer levies on the homestead, and the right does not exist *ipso facto*, but only when claimed as a homestead on a levy being made.

HOMESTEAD—EXEMPTIONS—STATUTES.

6. Section 221, B. & C. Comp., providing that the homestead of any family shall be exempt from judicial sale for the satisfaction of any liability subsequently contracted or for the satisfaction of any judgment subsequently obtained on such debt, creates an exemption from judicial sale only, and not from the lien of a judgment created by Section 205, providing that from the date of docketing a judgment or the transcript thereof it shall be a lien on all the real property of defendant, nor from a levy of an execution on the judgment, and a judgment becomes a lien on the homestead, which lien cannot be enforced while the land is so held, and where the debtor conveys the property the homestead right ceases, and his grantee takes title freed from the homestead right, but subject to the judgment lien which from the time of the conveyance is a superior right.

HOMESTEAD—EXEMPTIONS.

7. A judbment debtor, after the filing of the transcript of the judgment, and before the levy of execution, conveyed his homestead by

warranty deed for a recited consideration paid. After the levy the grantee by a similar deed reconveyed the land to the debtor. *Held,* that the debtor, not being the owner of the homestead at the time of the levy of the execution, could not then or thereafter assert the right of a homesead subsequently acquired as superior to the lien of the judgment.

From Malheur: GEORGE E. DAVIS, Judge.

Statement by MR. JUSTICE SLATER.

This is a suit by Minnie O. Hansen against William Jones, enjoining a sale under execution of plaintiff's real property, alleged to be her homestead. The facts are that on October 12, 1907, defendant obtained in the justice court of Malheur County a judgment against plaintiff and her present husband for the amount of $184.50 and costs, and two days thereafter caused a transcript of such judgment to be filed in the office of the county clerk of that county. On December 30th he caused execution to be issued, and on the following day to be levied on plaintiff's property, consisting of 120 acres of farming land, worth not to exceed $1,500, upon which she was then living with her family. The land, claimed to be plaintiff's homestead, was purchased in 1893 by William M. Lyman, plaintiff's first husband, and was conveyed to them jointly, creating an estate by the entirety. They moved onto the land and resided there with their children until Lyman's death, in 1897, whereupon plaintiff became the sole owner of the land. Thereafter plaintiff married her present husband, Axel A. Hansen, and to them children were born. They continued to live upon the land in question, and were living thereon at the time of the levy of the execution on December 31, 1907. Plaintiff has alleged that she caused to be served on the sheriff on January 13, 1908 (13 days after the levy and two days subsequent to the time of the filing of the original complaint), a notice that she claimed the land as her homestead, and to be exempt from sale; but there does not appear in the record any proof to support this aver-

ment.. On November 27, 1907, after the transcript of the judgment was filed in the office of the county clerk, but before the levy of the execution, plaintiff and her husband, by a general warranty deed, reciting a consideration of $1,000 paid to them, conveyed the land to Lawrence L. Lyman, plaintiff's son by her first husband. After the levy was made, on January 10th, the son, by a similar deed, reconveyed the land to plaintiff.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Albert N. Soliss.*

For respondent there was a brief and an oral argument by *Mr. George W. Hayes.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. Passing by certain objections made to the sufficiency of the complaint, based on the apparent want of notice of claim of homestead at the time of the levy, and before the filing of the complaint herein, the lack of proof of any notice as alleged, the failure to make the sheriff a party defendant, and also the claim that a married woman cannot assert, under the statute, a homestead right, we approach the real and fundamental contention in the case —whether the judgment became a lien on the land while it was claimed as a homestead, so as to follow the land into the hands of the son, and thereby cut off any claim of homestead by plaintiff arising at the time of the re-vesting of the title in her. There seems to be a unanimity of authority in adjudged cases, to the extent that, when a statute exempts a homestead from sale under execution, a judgment, obtained against a homestead debtor after the acquisition of the homestead right, will not create such a lien upon the homestead as can be enforced while it retains its homestead character in the hands of the debtor; but beyond this the decisions are conflicting.

2, 3. One line of authorities holds that a lien of a judgment does not in any event attach to the homestead, and that it may be conveyed free of such lien by the judgment debtor; while another line holds that the lien of a judgment does attach to an existing homestead, but remains dormant or in abeyance while the land continues to be owned and occupied as a homestead, but becomes active or potential as soon as the homestead right is lost, or terminated by alienation, abandonment, or otherwise. The right to a judgment lien, as well as the right to a homestead, is wholly statutory, and the question as to whether or not a judgment, docketed subsequently to the acquisition of a homestead by the judgment debtor, attaches to and becomes a lien thereon, must necessarily be merely a matter of construction.

4. As to judgment liens, our statute provides that:

"From the date of docketing a judgment * * or the transcript thereof, such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, or which he may afterwards acquire therein, during the time an execution may issue thereon." Section 205, B. & C. Comp.

And that:

"From the time of docketing a judgment of the justice's court, * * the same shall be a lien upon the real property of the defendant, as if it were a judgment of the circuit court where it is docketed." Section 225, B. & C. Comp.

The former section of the statute imposes the lien of a judgment upon all lands of the debtor during the time an execution may issue thereon. It was enacted in 1862, long prior to the creation of the homestead exemption. Unless, therefore, the expressed intent of the latter enactment is to withdraw a homestead from the operation of the lien of a judgment, or the subject-matter of the act is so in conflict with the former statute that both cannot be operative, then the plain meaning of the judgment lien

statute must be given its full effect; for, as was said in *Allen* v. *Cook*, 26 Barb. (N. Y.) 374, 380, "the only sound principle is to declare *'ita lex scripta est'*; and it would be going too far to make exceptions which the legislature has not made."

5. The homestead exemption law was enacted in 1893, and reads:

"The homestead of any family shall be exempt from judicial sale for the satisfaction of any liability hereafter contracted, or for the satisfaction of any judgment hereafter obtained on such debt. Such homestead must be the actual abode of, and owned by, such family, or some member thereof." Section 221, B. & C. Comp.

We recently held, in *Mansfield* v. *Hill*, 56 Or. 400 (107 Pac. 471), that this act created a personal right of exemption only, to be claimed when an officer shall levy upon such homestead, as required in Section 224, B. & C. Comp. The right does not exist *ipso facto* by virtue of the statute, or by having the lien set off as a homestead, or registered before the docketing of the judgment, but only when claimed as a homestead upon a levy being made. There is no prohibition in the statute against alienation or incumbrance by the owner, and the act expressly withdraws from its purview a sale upon a decree for the foreclosure of a mortgage, but when the owner is married it is required that the mortgage of a homestead be executed by both husband and wife. Section 223, B. & C. Comp.

6. Again, the exemption of the homestead is only from judicial sale, and not from the lien of a judgment, nor from the levy of an execution thereon. In fact, the statute expressly contemplates the existence of a lien and the issuance of execution and a levy, for to stay the sale thereunder requires a notice by the owner, wife, husband, agent, or attorney of such owner to the officer, when he shall levy upon the homestead. The language

of the statute is plain and free fom doubt or ambiguity, and is in no respect in conflict with the equally plain and comprehensive language of the judgment lien statute. The lien of a judgment attaches to the realty and is clearly preserved, but the sale is stayed, and the remedy suspended until the debtor ceases either to own or occupy the premises, for a homestead is exempt only while possessing the character of a homestead; that is, it must be the actual abode of and owned by such family or some member thereof. When it ceases to be occupied, although it may be owned by some member of the family, it is no longer a homestead, and if it should be the abode of the family, but has been aliened to one not a member of the family, it is not a homestead. As we have said, the right of exemption is a mere personal right, which the statute secures to the debtor, to the members of his family, and to his heirs, after his decease, which right does not run with the land and cannot be transferred to another with the land. Referring to a similar statute, it was said in *Allen* v. *Cook*, 26 Barb. (N. Y.) 374, 380: "It is entirely silent as to the right of the debtor to sell and convey his homestead; nor does it declare that the purchaser shall have any right, beyond those which he would acquire under an ordinary conveyance of real property subject to existing liens and incumbrances. It is argued that Packard could convey as good a title as he himself had in the house and lot in question. This may be true in the abstract. He had the legal title at common law, subject to such liens as might have been acquired against it; and he had the right to have his homestead protected from sale under execution, so long as he continued to hold and occupy and enjoy it with his family; but he could not convey away this personal right." The following additional cases support this construction of statutes, not materially differing from the one now under consideration: *Smith* v. *Brackett*, 36

Barb. (N. Y.) 571; *State Bank* v. *Carson,* 4 Neb. 498; *Eaton* v. *Ryan,* 5 Neb. 47; *Kellerman* v. *Aultman* (C. C.) 30 Fed. 888; *Whitworth* v. *Lyons,* 39 Miss. 467; *Chambers* v. *Sallie,* 29 Ark. 407; *Jackson* v. *Allen,* 30 Ark. 110; *Norris* v. *Kidd,* 28 Ark. 485; *Hoyt.* v. *Howe,* 3 Wis. 752 (62 Am. Dec. 705) ; *Folsom* v. *Carli,* 5 Minn. 333 (Gil. 264) (80 Am. Dec. 429) ; *Tillotson* v. *Millard,* 7 Minn. 513 (Gil. 419), (82 Am. Dec. 112).

By the early decisions of the Supreme Courts of Wisconsin and Minnesota, statutes providing in general terms that judgments should be liens on all the defendant's real estate were construed as extending such liens over homesteads, which by law were exempt from sale under execution. This will appear by the decisions cited from those states; but the rule as announced in those decisions was later abrogated by statutes enacted after the rendition of such decisions, and therefore the later decisions of those states are not opposed to this view. What is said by some authors to be an opposing doctrine to that announced by the above cases is thus stated by Mr. Freeman:

"Homesteads exempted from execution by statute are thereafter, as long as they retain their homestead character, clear from all judgment liens, and may, notwithstanding judgments docketed against their owners, be by them conveyed or incumbered without furnishing any opportunity for such liens to attach." 2 Freeman, Judgments (4 ed.) § 335.

See, also, an extended note to the case of *Vanstory* v. *Thornton* (N. C.) 34 Am. St. Rep. 483, 496.

Most, if not all, of the leading cases cited in support of this supposed contrary doctrine have been found, upon examination, to be based upon statutes conferring judgment liens and granting homestead rights radically different from our own and from the statutes of the states from which the foregoing authorities have been collated, and of course where the statutes differ it necessitates a

different construction, and a different result is obtained. We proceed to consider some of the cases said to support the contrary doctrine. In *Bowman* v. *Norton,* 16 Cal. 213, Norton gave two several mortgages on property occupied by him with his family, and claimed by him as a homestead; his wife not joining in the execution of either of the mortgages. After the maturity of the notes secured by the mortgages, suits were instituted to foreclose, and the usual judgments were obtained. Later on Norton. filed a petition in insolvency, asking to be discharged from his debts and liabilities, and to have the mortgaged property declared to be his homestead. In the final decree therein the premises were set apart as a homestead for the benefit of himself and family, without mentioning the mortgages or incumbrances thereon. Afterward Norton and his wife, by their joint deed, sold a portion of the land to plaintiff, who afterwards brought suit to quiet his title against the claims of the defendants, asserted by virtue of the respective mortgages and judgments. It was held that the mortgages were not void, but invalid only as against the assertion of the homestead rights of the respondent and wife, and could be enforced by the judgments recovered thereon whenever those rights were relinquished and that they had been relinquished by the conveyance to plaintiff. In that connection it was said by Mr. Chief Justice FIELD, who delivered the opinion, that "such rights may be released and abandoned; but they are, in their nature, incapable of sale and transfer. The exemption of the property from forced sale is the personal right of both husband and wife, and the restraint upon the husband's power of alienation is the personal right of the wife alone, and they cannot be assigned to others." In support of such interpretation of the statute of that State, the leading case of *Hoyt* v. *Howe,* 3 Wis. 752 (62 Am. Dec. 705), was cited and commented upon. That

case held that a judgment recovered against the owner
of premises, while they were occupied as a homestead,
became a lien; that it could not be enforced while the
premises remained a homestead, but so soon as the,
homestead character was gone they became subject to
sale under the judgment. The opinion was not criticised,
but was adopted by Judge FIELD as an authority in the
case he was considering. The judgment in the one case
was made analogous to the lien of the mortgages in the
other. It was said, however, by Mr. Chief Justice FIELD,
that a judgment of itself could not in that State become
a lien upon a homestead because of the statute, which
limited the lien of a judgment to the real property of the
judgment debtor, which is "not exempt from execution."
We have no such limitation in the statute of our State,
which provides that the lien shall be upon all of the real
property of the judgment debtor during the time an
execution may issue thereon, and this fact distinguishes
the holding in that case from the cases hereinbefore cited
as sustaining the opposite theory.

In the State of Illinois, until the execution is received
by the officer, a lien did not attach to the lands in the
hands of the debtor, nor as to *bona fide* creditors and
purchasers, until the officer has made and filed a cer-
tificate of the levy with the recorder (*Bliss* v. *Clark*, 39
Ill. 590, 595: 89 Am. Dec. 330), and hence when the
statute of that State, creating the homestead right, casts
such right upon the debtor coming within its provisions,
and makes it effective *ipso facto*, without requiring him
to perform any act, to discharge any duty, or manifest
any intention of availing himself of its benefits, and at
the same time makes the homestead exempt from levy
as well as sale (*Green* v. *Marks*, 25 Ill. 221), it must be
plain that a judgment lien could not attach to a home-
stead in that State, and the cases cited are not in conflict
with the authorities hereinbefore referred to, as sus-

taining the doctrine announced in *Hoyt* v. *Howe*, 3 Wis. 752 (62 Am. Dec. 705).

The decision in *Morris* v. *Ward*, 5 Kan. 239, was based altogether upon the peculiar wording of the statutes of that State, respecting judgment liens and homestead rights. The homestead was made exempt from sale under any process of law, and contains a provision against alienation by the husband without the joint consent of husband and wife. The obligations sought to be enforced were incurred by the husband alone, and it was held that no judgment or other legal proceeding against the husband only could, so far as affecting the homestead, be binding upon either husband or wife, or upon any one else. As to a judgment lien, the statute was interpreted to extend only to such lands as are not exempt by law. At page 245 of the opinion, the wording of Section 432 of the statute of that State (Comp. Laws 1862, p. 194) is given as follows:

"Lands, tenements, goods and chattels not exempt by law, shall be subject to the payment of debts, and shall be liable to be taken on execution and sold as hereinafter provided."

The same distinctions are discoverable in *Cantrell* v. *Fowler*, 24 S. C. 425. The case of *Lamb* v. *Shays*, 14 Iowa 567, is perhaps the most difficult to distinguish, as the lien statute of Iowa is substantially the same as that of this State; but it is first pointed out in the opinion that the section of the statute in relation to judgment liens and that giving to the owner of the homestead the exemption were passed at the same time, and hence they must be construed together. The one gave to the judgment creditor a lien on all the lands of the defendant, and the other denied him the right to enforce it so far as the homestead is concerned. It was held that it was not the intention of the legislature, when enacting these two statutes simultaneously, that a lien should ever

attach upon property that was declared exempt from judicial sale. The decision, however, is not based exclusively upon this construction of the concurrent statutes, for other provisions of the law, in relation to homesteads, which are pointed out in the opinion, bear upon the determination of the question under consideration; and in that connection it was observed that the authorities cited to the court, including *Allen* v. *Cook,* 26 Barb. (N. Y.) 374, 380, and *Folsom* v. *Carli,* 5 Minn. 333 (Gil. 264), (80 Am. Dec. 429), in support of the opposite view, appear to have been made upon statutes having provisions different from those contained in the statutes of Iowa. There is undoubtedly a substantial difference, which could reasonably account for the divergent results, and the same may be said of all the cases usually arranged in the two classes, as supporting the opposite theories. The line of departure appears in the statutes of the several states, and not in the reasoning of the cases.

We conclude, therefore, that defendant's judgment became a lien on the land in question, while it was in fact plaintiff's homestead, although the judgment was incapable of enforcement while the land was so held. But when plaintiff conveyed the property the homestead right ceased to exist, and her grantee took the full title freed therefrom, but subject nevertheless to the judgment lien, which from that time became superior in right.

7. The question whether a homestead right, arising subsequent to the time when the judgment lien attached, and subsequent to the levy of an execution, will defeat a sale thereunder, remains to be considered. It has generally been held that a judgment lien takes precedence of a subsequently acquired homestead. *Gage* v. *Neblett,* 57 Tex. 374; *Elston* v. *Robinson,* 21 Iowa 531; *Bills* v. *Mason,* 42 Iowa 329; *Bowker* v. *Collins,* 4 Neb. 494; *Bunn* v. *Lindsay,* 95 Mo. 250 (7 S. W. 473: 6 Am. St. Rep. 48); *Smith* v. *Richards,* 2 Idaho (Hasb.) 498 (21 Pac. 419);

*Kennerly* v. *Swartz,* 83 Va. 704 (3 S. E. 348) ; *Kelly* v. *Dill,* 23 Minn. 435; *Bartholomew* v. *Hook,* 23 Cal. 278; *Robinson* v. *Wilson,* 15 Kan. 595 (22 Am. Rep. 272) ; *Bullene* v. *Hiatt,* 12 Kan. 98. This, it will be observed, is the rule in states the statutes of which necessitate the holding that the lien of a docketed judgment will not attach to a homesead acquired before the entry of the judgment, and while the homestead is occupied and held as such, as well as in states adopting the opposite view; but it is there held that, having once attached, the judgment lien will not be displaced by a subsequently acquired homestead. In *Bowker* v. *Collins,* 4 Neb. 494, it was said that the law evidently requires that the lands to be selected as a homestead shall be actually used for that purpose at the time the judgment is recovered; but in this case it is not necessary to go further than to say that, in order that a homestead right may be superior to a judgment lien, the premises must at least be owned and occupied as a homestead at the time of the levy. In this case plaintiff was not the owner of the premises at the time the execution was levied, and therefore she could not then, or thereafter, assert the right of a homestead subsequently acquired as superior to the lien of the judgment. *Moore* v. *Granger,* 30 Ark. 575; *Butler* v. *Nelson,* 72 Iowa 732 (32 N. W. 399) ; *Archer* v. *Jacobs,* 125 Iowa 467 (101 N. W. 195).

The decree will therefore be reversed, and one entered here dismissing the suit, with costs to defendant.

REVERSED : REHEARING DENIED.