## GRAY v. DEAL *et al.*

No. 4592.   Opinion Filed July 6, 1915.

(151 Pac. 205.)

1. **INDIANS — Allotments — Right to Alienate — Statute.** By the fourth paragraph of section 2, Act Cong. June 28, 1906, c. 3572, 34 Stat. at L. 539, known as the "Osage Allotment Act," all lands allotted to the members of the Osage Tribe were made inalienable for a period of 25 years from the date of selection.

2. **SAME—Removal of Restrictions—Certificate of Competency.** The issuance of a "certificate of competency" to an adult Osage Indian, by the Secretary of the Interior, under paragraph 7, Act June 28, 1906, did not remove the restrictions on alienation so as to subject the surplus allotment of such Indian to a judgment lien rendered in an action of debt against him.

3.   **HOMESTEAD—Exemption to Family.** The homestead exemption in the Oklahoma Constitution (section 303, Williams' Okla. Const.) protects the homestead of the family from forced sale for the payment of debts and from judgment liens, except for the purchase money, taxes, work and material, and a debt created by mortgage executed by husband and wife.

4.   **SAME—Conveyance—Incumbrances.** The homestead may be sold and conveyed by the husband and wife jointly, and the purchaser will take the title free and clear from all judgment liens or debts, except those enumerated in the homestead exemption clause of the Constitution.

5.   **SAME — Constitutional Exemption — "Protect."** As used in Williams' Const. sec. 303, providing that the homestead shall be protected from forced sale, etc., "protect" means to insure or shield from danger, harm, damage, trespass, or the like; to defend or to preserve in safety.

(Syllabus by Galbraith, C.)

*Error from District Court, Osage County;*
*Paul B. Mason, Special Judge.*

Action by F. W. Gray against Julia A. Deal and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*L. A. Maris* and *W. K. Moore,* for plaintiff in error.

*Robt. Stuart,* for defendants in error F. Stuart and Helen Stuart.

Opinion by GALBRAITH, C. This action was commenced in the trial court by the plaintiff in error, seeking to enforce a judgment lien against the homestead of Julia A. and George Deal, after it had been conveyed and was held by the vendee. The defendant in error, F. D. Foutz, by answer and cross-petition also seeks to enforce a judgment lien against the surplus allotment of Julia A. Deal. There was a trial to the court and judgment for the defendants, denying the lien claimed by the plaintiff, as well as that claimed by the defendant Foutz. To review that judgment the cause has been brought here.

There is no controversy as to the facts; they are briefly as follows: Julia A. Deal, a member of the Osage Tribe of Indians, on August 9, 1907, purchased lots 15, 16, and 17, in block 98, of the original town site of Pawhuska. The home of Julia A. and her husband, George Deal, was immediately established on these lots, and they continued to reside there until January 27, 1909, when they sold and conveyed the property to Leonard Revard. The judgment of the plaintiff in error, by which he seeks to establish a lien against this property, was rendered in the county court of Osage county, November 11, 1908, against Julia A. Deal and George Deal, and such judgment was, on that day, entered on the judgment docket of that court. That Julia A. Deal, as a member of the Osage Tribe of Indians, received her allotments, homestead and surplus, under the Osage Allotment Act of June 28, 1906, and that deeds were duly issued therefor on June 5, 1909. That on November 16, 1909, there was issued to Julia A. Deal, by the Secretary of the Interior, under the Allotment Act, a "certificate of competency." That on the 3d day of January, 1910, F. D. Foutz recovered a judgment in the county court of Osage county against Julia A. Deal and George Deal, and that this judgment was certified to the district court of said county and entered on the judgment docket of said court, and an execution issued from the district court thereon, and returned by the sheriff "No property found."

The questions presented by this appeal are: First, whether or not the judgment of Foutz became a lien against the surplus allotment of Julia A. Deal, and can be enforced by the sale of the same; second, whether or not the judgment of Gray became a lien against the homestead of Julia A. and George Deal, located in the town of

Pawhuska, namely, lots 15, 16, and 17, block 98, and can be enforced against their vendee.

The first question is settled against the contention of Foutz in *Neilson v. Alberty,* 36 Okla. 490, 129 Pac. 847. In the course of the opinion it is said:

"It will thus be seen that the homestead allotment shall be and remain inalienable and nontaxable for a period of 25 years or during the life of the homestead allottee, while the surplus lands are made inalienable for 25 years, except as in said act provided; the provision referred to being the issuance to the allottee of a certificate of competency. In other words, that without the issuance of a certificate of competency no alienation, voluntary or involuntary, could be made of said lands, at least during the lifetime of the allottee; that the lands were not subject to either alienation or incumbrance of any kind or in any form. Any authority, therefore, for the transition of title, the creation of a lien or incumbrance, or any act of commission or omission that would, in any wise, affect the title of the living allottee must be found in the seventh paragraph of said section, authorizing the Secretary of the Interior to issue certificates of competency to adult members of the tribe."

It was expressly held in this case that the issuance of a "certificate of competency" to the allottee "did not remove the restrictions on alienation so as to subject said lands to a judgment lien." This case disposes of the contention of Mr. Foutz.

As to the contention of the plaintiff in error, Mr. Gray, it is argued in his behalf that his judgment against the Deals became a lien against this homestead property located in Pawhuska; that this lien was dormant while the property was used and occupied as a home, but immediately upon its sale to Revard the judgment lien re-

vived and can be enforced against the property. In other words, that the vendee of the homestead took the title subject to this judgment lien. It is urged that the statute (sections 5941 and 5942, Comp. Laws 1909; sec. 5148, Rev. Laws 1910), which provides that judgments rendered in courts of record shall be a lien against all real estate of the judgment debtor located in the county where the judgment is rendered, does not exempt the homestead from its operation, and that the homestead exemption in the Constitution only protects the homestead from forced sale while it is used and occupied as a home, and that when the property is sold or ceases to be used as a home, then the judgment lien can be enforced against it; that immediately upon the sale of the property Gray's judgment lien was revived and can be enforced against the property, although held by the vendee. There are cases in other jurisdictions sustaining this view. *Hansen v. Jones,* 57 Or. 416, 109 Pac. 868; *Folsom v. Carli,* 5 Minn. 333 (Gil. 264), 80 Am. Dec. 429; *Hoyt v. Howe,* 3 Wis. 752, 62 Am. Dec. 705. An examination of these cases, however, discloses the fact that they are construing statutory exemption, while in this state the statute provides for the judgment lien, and the Constitution prescribes the homestead exemption. Then this construction of the statutory exemption in the above cases does not appeal to us. The effect of such construction is to emasculate the homestead exemption, and thereby deny protection to the weak and defenseless. The constitutional provision, which, of course, controls the statute providing for judgment liens, (section 303, Williams' Const.) reads:

"The homestead of the family shall be, and is hereby, protected from forced sale, for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and

material used in constructing improvements thereon; nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law; provided, nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein; nor prevent the sale' thereof on foreclosure to satisfy any * * * mortgage."

A lien is defined by section 3822, Rev. Laws 1910:

"A lien is a charge imposed upon specific property by which it is made security for the performance of the act."

The definition of a lien seems to negative the idea of a dormant lien, and to support the theory that a lien, if it exists at all, must be active. It would seem that, if a lien is a charge against the specific property, and is made a security for the performance of the act, i. e., for the payment of debt, from the date such lien attaches, then, if at any time it becomes dormant, it ceases to be a lien. The constitutional provision is that the homestead of the family "shall be and is hereby protected from forced sale, for the payment of debts," etc. If the homestead is protected from forced sale for the payment of debts, surely no judgment lien, whether dormant or not, can attach thereto. The word "protect" means to "insure or shield from danger, harm, damage, trespass, insult, temptation, or the like." "Defend" is another definition. "To preserve in safety" is a further definition. If the homestead is "protected," it is "preserved in safety" from judgment liens, and cannot be made subject to the payment thereof.

It is admitted that the judgment lien cannot attach while the property is occupied and used as a homestead; that being true, it cannot attach when the property is

sold, because it does not then belong to the judgment debtor. It follows from a liberal, if not a literal, construction of the homestead exemption, that a lien cannot attach to the homestead at all.

The Supreme Court of Kansas, in reply to a similar contention to that made herein, in the case of *Morris v. Ward*, 5 Kan. 239, say:

"We do not adopt this construction of our homestead laws; we do not believe that the framers of the Constitution intended to found the homestead of the family upon such a precarious foundation, or to protect it by such slight and fragile safeguards. The homestead was not intended for the play and sport of capricious husbands merely, nor can it be made liable for his weaknesses or misfortunes. It was not established for the benefit of the husband alone, but for the benefit of the family and of society—to protect the family from destitution, and society from the danger of her citizens becoming paupers. The other view of the homestead laws, and the one which we adopt, is that no incumbrance or lien or interest can ever attach to or affect the homestead, except the ones specifically mentioned in the Constitution. *'Expressio unius est exclusio alterius.'* These are liens for taxes, for the purchase money, for improvements made on the homestead, and liens given by the 'joint consent of the husband and wife.' No alienation of the homestead by the husband alone, in whatever way it may be effected, is of any validity; nothing that he alone can do or suffer to be done can cast the slightest cloud upon the title to the homestead; it remains absolutely free from all liens and incumbrances except those mentioned in the Constitution."

And, again, Judge Valentine, speaking for the court, in the course of this opinion, said:

"Then to obtain a lien upon real estate is to obtain an interest therein, which may, in time, ripen into a per-

fect estate in fee simple. Such interest is really an incumbrance upon the land, such as is claimed by the defendant below. If the judgment claimed to be a lien upon the land is against the husband alone, then it is obtaining an interest in the homestead of the family through the agency—the act or omission—of the husband alone. It is, so far, an alienation of the homestead by the act or omission of the husband alone, and without the consent of the wife. Such a construction is in direct conflict with the spirit of the Constitution, if not with the letter. It is not for the interest of society that families should forever remain stationary and their homesteads be perpetual prisons; on the contrary, it is for the interest of society, as well as of families, that families should be free to go and reside wherever they can do the best. But if the law is as claimed by the defendant below, then whenever a judgment is rendered against the husband, the family must forever remain where it is at the time such judgment is rendered, or lose, not only its homestead, but also the means of acquiring another. The innocent family and society must suffer through the improvidence —perhaps fraud—or the misfortunes of the husband."

The construction of the homestead exemption by the Kansas Supreme Court is given additional force by the fact that a part of the Oklahoma homestead exemption is identical in language to that of Kansas. It can make no difference in the construction of this constitutional provision that the judgment in the case at bar was rendered against both the husband and wife, since, if the homestead is subject to a judgment lien, the lien of a judgment against either would attach thereto in like manner as against both.

We conclude that the homestead of the family in Oklahoma is protected from forced sale for the payment of debts, such as that claimed by the plaintiff in error,

and that a judgment lien did not attach against the homestead of the Deals, and that they conveyed the same free from the judgment lien claimed by the plaintiff in error, and that the trial court was right in so holding.

We therefore recommend that the judgment appealed from be affirmed.

By the Court:   It is so ordered.