### JAPP v. SAPULPA STATE BANK.

No. 13362—Opinion Filed June 5, 1923.

#### (Syllabus.)

1. **Homestead—Abandonment — Temporary Absence.**

Temporary absence from a homestead under employment which requires a family to reside off of same, does not constitute abandonment thereof.

2. **Same—Intention to Abandon—Burden of Proof.**

It is the prevailing rule in this state that on the question of abandonment of a homestead the intention to abandon is the controlling fact to be determined. In such case the burden of proving such intention is upon the party charging same. Carter v. Pickett, 39 Okla. 144, 134 Pac. 440; Nelson v. Fightmaster, 4 Okla. 38, 44 Pac. 213.

3. **Homestead—Conveyance — Liability for Debts and Liens.**

A homestead may be sold and conveyed by husband and wife jointly, and the purchaser will take title free and clear of all judgment liens or debts, except those enumerated in section 2, art. 12, of the Constitution. Gray v. Deal, 50 Okla. 89, 151 Pac. 205.

And creditors cannot complain of the action of a homesteader in conveying his homestead, whatever the consideration of such conveyance or the motive for making same may have been. First National Bank v. Coates, 62 Okla. 142, 161 Pac. 1095.

4. **Homestead—Purpose of Exemption.**

The spirit of the homestead is to protect the wife and family against improvidence of the head of the family, and also to protect the head of the family against the demands of urgent creditors.

5. **Same—Judgment Lien.**

Though a judgment may be obtained against the owner of a homestead as provided in section 690, Comp. Stat., 1921, and recorded as provided in sections 759, 760, Id., such judgment constitutes no lien upon the homestead.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by Amil H. Japp against the Sapulpa State Bank to remove cloud from title. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

D. B. Madden, Brown & Reynolds, and Japp & Duncan, for plaintiff in error.

C. B. Rockwood, J. G. Ellinghausen, and E. A. Ellinghausen, for defendant in error.

HARRISON, J. This action was begun in the court below by plaintiff in error against defendant in error, hence the parties will be referred to herein as plaintiff and defendant.

The object of the action was to remove an apparent cloud upon the title. to certain real estate consisting of lots in the city of Sapulpa, the cloud in question consisting of a judgment lien. against plaintiff's grantors. Plaintiff claimed the lots under a warranty deed from E. C. Phemis and wife, grantors; defendant claimed a lien against same by virtue of a judgment previously obtained against. grantors. Plaintiff contended that the lots were the homestead of grantors; defendant contended that the grantors had abandoned their homestead rights by removing to another town.

The material issue, therefore, was whether grantors had abandoned their homestead rights. In the trial of such issue plaintiff introduced his evidence and rested. Defendant offered no evidence, but demurred to the sufficiency of plaintiff's evidence. The court sustained the demurrer, saying:

"The Court: In my opinion, there are two very good reasons why this demurrer to the evidence ought to be sustained. The first is that the deed from this fellow Phemis to his wife, it appears from the testimony of Mr. Japp himself, that there has been a re - linquishment of any homestead. The second reason is that when the two of them, in 1921, conveyed this land to Mr. Japp, it was for the purpose of paying $3,000 due him and his partner for attorney's fee. I understand the law to be that they may sell this property for cash and reinvest the proceeds in a homestead, but they certainly could not pay a debt with it. The demurrer will be sustained"

—and thereupon rendered judgment sustaining priority of defendant's judgment lien.

Plaintiff appeals to this court, presenting four propositions, which, however, may be determined by answering the two following questions of law:

(1) Does temporary absence under employment which requires a family to reside off a homestead constitute abandonment thereof?

(2) Does a judgment against the owner of a homestead constitute a lien which must be satisfied before such owner can convey unincumbered title to his homestead?

Both these questions have been answered in the negative by this court. The first question is definitely answered in Carter v. Pickett, 39 Okla. 144, 134 Pac. 440, wherein it is said:

"A mere temporary absence from the state, even though prolonged, for health,

business, or pleasure, or perhaps for the purpose of education, will not ordinarily be sufficient to defeat the right to a homestead within the state. Nor will the temporary renting of the homestead of itself tend to change its character. * * * "

"It is almost universally recognized by the courts that homestead and exemption laws should be liberally construed. In harmony with this rule of construction, proof of an abandonment of a homestead must be clear and convincing. Absence therefrom, or from the community or state, of itself is not sufficient to defeat the beneficent purpose of both our organic law and legislative enactments."

A like answer has been given by this court in McCammon v. Jenkins, 44 Okla. 612, 145 Pac. 1163; First National Bank v. Coates, 62 Okla. 142, 161 Pac. 1095; (opinion withdrawn; for new opinion, see 65 Okla. 94, 163 Pac. 714); German State Bank v. Chas. Ptachek, 67 Okla. 176, 169 Pac. 1094.

In McCammon v. Jenkins, supra, it is said:

"A homestead cannot be abandoned without a going away from it with the definite intention never to return."

In First National Bank v. Coates, supra, though the owner of the homestead had removed from the state, from the United States, and temporarily resided in Canada, it was said:

"One who has a homestead in this state does not forfeit his right to claim such homestead as exempt from levy and sale for payment of unsecured debts, by his temporary absence from the state with intention of returning to the state and to his homestead."

And the decisions of this court are in harmony with the prevailing rule that the intention of the homesteader is the controlling fact in the question of abandonment. 21 Cyc. 603; Lazell v. Lazell, 90 Mass. 575; Boot v. Brewster (Iowa) 26 N. W. 649; Keading v. Joachimethal et al. (Mich.) 56 N. W. 1101; Edwards v. Reid (Neb.) 58 N. W. 202; McMillian v. Warner, 38 Tex. 410; Gray v. Patterson. (Ark.) 46 S. W. 730; Palmer Oil & Gas Co. v. Parrish (Kan.) 59 Pac. 640; Ball v. Ramsey (Ky.) 77 S. W. 692; 13 R. C. L. secs. 108, 109, pages 647, 648.

And upon the party who charges abandonment rests the burden of proving the intention of abandonment.

In Carter v. Pickett, supra, this court said:

"It is in harmony with this rule of construction that proof of an abandonment of a homestead must be clear and convincing."

In Nelson v. Fightmaster, 4 Okla. 38, 44 Pac. 213, it was held:

"If it does not clearly appear * * * debtor will generally be allowed benefit of the doubt."

Also Long v. Talley, 84 Okla. 38, 201 Pac. 990.

Therefore the trial court was in error in assuming that the burden was upon the plaintiff to show that it was not the intention of grantors to abandon their homestead.

The policy of protection of homesteads to the heads of families in this state is rested upon a higher plane and has a more wholesome purpose in view, a more beneficent mission to fulfill, than the protection of sordid pecuniary interests; it is actuated by higher impulses than moneyed considerations.

As to the second question, as above stated, this court has definitely and emphatically answered it in the negative. Gray v. Deal, 50 Okla. 89, 151 Pac. 205; Gerlach Bank v. Allen, 51 Okla. 736, 152 Pac. 399; Hedgpath v. Hudson, 61 Okla. 221, 160 Pac. 603; First National Bank v. Coates, 62 Okla. 142, 161 Pac. 1095; Kershaw v. Willey, 22 Okla. 677, 98 Pac. 908.

In Gray v. Deal, supra, it is said:

"The homestead may be sold and conveyed by the husband and wife jointly, and the purchaser will take title free and clear from all judgment liens or debts, except those enumerated in the homestead exemption clause of the Constitution."

See, also, Hixon v. George, 18 Kan. 253, citing other Kansas cases. To the same effect, McMillian v. Warner, 38 Tex. 410; Gray v. Patterson (Ark.) 46 S. W. 730; Deweese v. Deweese (Ky.) 90 S. W. 256.

The trial court seems to have attached material importance to the fact that Phemis, the plaintiff's grantor, had deeded his homestead to his wife, or placed the title in her name, but in Kershaw v. Willey, supra, this court, speaking through Mr. Justice Kane, said:

"A creditor of a husband cannot inquire into the good faith of the husband in deeding a homestead to his wife. * * *

"The spirit of the homestead law is to protect the wife and family against the improvidence of the head of the family, as well as against urgent creditors."

And in First National Bank v. Coates, supra, it is held:

"If the homestead has not been abandoned, the defendant is free to dispose of it as he might wish, and his creditors cannot complain of his action in conveying the homestead to his daughter, whatever the consideration of such conveyance or whatever the motive for making it may have been."

The above holding by this court shows also that the trial court was in error as to his second reason for sustaining the demurrer, viz.:

"The second reason is that when the two of them, in 1921, conveyed this land to Mr. Japp it was for the purpose of paying $3,000 due him and his partner for attorney fees."

A creditor of the owner of a homestead can neither question the consideration for which a homestead is conveyed nor the motive of the owner in making such conveyance. The law gives a creditor no right to inquire into the motives for making the conveyance, nor lien upon the proceeds of sale.

In Kershaw v. Willey, supra, where a homestead had been conveyed by husband and wife, and where the husband had agreed that the proceeds of sale should go to the wife, and where such proceeds had been paid to her and she had deposited same in the bank, this court held that the money so deposited was the personal property of the wife and not subject to the demands of the creditors of her husband. In other words, the law gives a creditor no lien upon the homestead of a family.

Even the statutes upon which the defendant relied for relief, viz., section 690, Comp. Stats. 1921, sections 759 and 760, Id., which give a judgment creditor a lien upon real estate of a debtor and prescribe the procedure for making such lien legal and enforceable, do not give a creditor a lien upon a homestead of the debtor.

In Garrison v. Carl, 64 Okla. 14, 166 Pac. 152, this court said:

"Judgments do not become liens upon the homestead of the judgment debtor when filed in the office of the clerk of the district court pursuant to Revised Laws 1910, section 5148"

—which latter section is the same as section 690, supra, Comp. Stats. 1921—citing Gray v. Deal, 50 Okla. 89, 151 Pac. 205; Gerlach Bank v. Allen, 51 Okla. 736, 152 Pac. 399; Hedgpath v. Hudson, 61 Okla. 121, 160 Pac. 603.

The fact that a judgment may be obtained against the owner of a homestead and that such judgment has been filed and recorded with the clerk of the district court, as provided in sections 690, 759, and 760, Comp. Stats, 1921, creates no lien whatever against the homestead.

In Gray v. Deal, supra, after quoting the statutory definition of a lien, this court said:

"The definition of a lien seems to negative the idea of a dormant lien, and supports the theory that the lien, if it exists at all, must be active."

The above language was quoted again in Garrison v. Carl, supra, and the same thought is followed in Bank v. Pratt, 72 Oklahoma, 180 Pac. 376.

Hence, under the decisions of this court, a judgment against the owner of a homestead constitutes no lien upon the homestead nor upon the proceeds of sale. Garrison v. Carl, supra, page 16.

As heretofore stated, the defendant offered no evidence. The plaintiff offered the testimony of both grantors, Phemis and his wife, who testified positively that they had never abandoned their homestead, nor had any intention of abandoning same, nor any intention to part with same until they conveyed same to plaintiff herein. Plaintiff also introduced four other witnesses, besides himself, who testified positively to have heard the grantors at different times avow their intention to return to their homestead. Plaintiff also introduced several witnesses who corroborated the testimony of grantors, Phemis and wife, as to why they were temporarily absent from their homestead; that he was an oil operator, and she was a school teacher; that she procured a position in the public schools of Devol, Okla., and he obtained work in the oil fields near by. That while thus engaged, they temporarily resided in the town of Devol, and it being impossible to rent a house without paying an exorbitant price, they were forced to purchase some inexpensive property in the town of Devol with which they could make out while they resided there, and which they hoped to be able to dispose of without loss when they returned to their homestead. There was no proof whatever to contradict this testimony. The circumstances of their absence were all the court had upon which to base its assumption that they had intended to abandon their homestead. These circumstances being fully explained and the explanation being unrefuted, it follows that the court erred in treating their absence as an abandonment and in sustaining the demurrer to the sufficiency of the evidence. The law does not prescribe that the owner of a homestead must reside upon same in order to avail himself of the benefits thereof. Section 1, art. 12, of the Constitution defines a homestead, and specifically provides that a temporary absence therefrom does not change its character; and section 2, Id., provides that it shall be free from the touch of creditors. It nowhere says that actual residence

upon a homestead is a necessary requisite to the benefits thereof. Actual residence is necessary under the pre-emption laws of the United States, but is not necessary under the exemption laws of this state.

Contention is made that Mr. Phemis, the head of the family, was not a dependable person, that he had violated the law, had been indicted for alleged offenses, and that the plaintiff, Japp, had been employed to defend him against such charges; but in answer to such contention it will suffice to say that it is such families that it is the policy of the homestead law to protect; it is to such families that the law of this state extends its protecting hand.

In view of the record herein and in view of the oft-reiterated policy of the state to protect homestead rights, the judgment should be reversed, and cause remanded for further proceedings.

Reversed and remanded.

JOHNSON, C. J., and McNEILL, KENNAMER, and COCHRAN, JJ., concur.