ROQUE SANTI GALLETI ET AL., Plaintiffs and Appellants, *v.* FEDERAL LAND BANK OF BALTIMORE ET AL., Defendants and Appellees.

No. 6855. Argued January 28, 1935.—Decided February 15, 1935.

*V. Zayas Pizarro* and *J. Teissoniere* for appellants.    *Frank Martínez* and *E. Campos del Toro* for the appellee bank.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

Antonio Miranda Berríos and his wife, Teresa de Jesús Rodríguez, the owners of two properties situated in Villalba, on January 21, 1925, applied to the Federal Land Bank of Baltimore for a loan of $5,000. The bank agreed to make the loan on March 24, 1925, reducing the amount to $3,700, and accepted the said two properties as mortgage security. The borrowers informed the bank that $500 was for the construction of a dwelling house and $250 for fences, repairs, and improvements. On May 4, 1932, the defendant bank sought to enforce its credit through the summary proceeding authorized by the Mortgage Law. This proceeding was directed against Julia García Reyes, who then appeared to be the owner of the properties, but it was later proved, to the satisfaction of the lower court, that said immovables belonged to Roque Santi and María García Reyes, and hence the prosecution of the summary foreclosure proceeding was continued against them. Both properties, one of ninety-three *cuerdas* and the other of four *cuerdas* and some hundredths of a *cuerda,* were awarded to the defendant bank, which took possession of the larger tract, the possession of the smaller tract remaining pending. The lower court dismissed the complaint on the merits, as it considered, among other things, that since the mortgage had been constituted prior to the date of the purchase of the property by the plaintiffs, their right to avail themselves of the homestead exemption authorized by law did not exist. The defendant bank had set up this defense and further alleged that, of the amount of

the mortgage loan, $500 had been lent by the said bank for the construction of the dwelling house now claimed by the plaintiffs, and $250 for improvements on the two mortgaged properties which answer jointly and severally for the amount of the mortgage. The lower court held that, as the purchasers had not been parties to the original application for the loan, wherein were stated the purposes for which said amounts should be expended, they were not bound with notice of that instrument.

The first error assigned relates to the dismissal of the action by the lower court on the ground that it had been shown that at the time of the execution of the mortgage the plaintiffs had not constituted their homestead. It is further urged that the court *a quo* erred in failing to hold that, as there was a homestead right in favor of Mr. Miranda, the former owner, who had not abandoned the same at the time of the execution of the mortgage in favor of the Federal Land Bank of Baltimore, and as he had sold and delivered the said property to the plaintiffs who were heads of family and qualified to establish, as they did establish, a homestead on that property, such homestead was legally constituted by them to the prejudice of the mortgagee, inasmuch as such homestead right was not abandoned either by the original mortgagor or by the purchasers thereof.

The essential question to be decided in this case is whether the plaintiffs, who purchased the property, acquired it free from encumbrances or liens through the fact that the spouses who sold it had their homestead constituted therein. In other words, whether, despite the fact that the owners had sold and vacated the property and had given the plaintiffs material possession thereof, the homestead exemption that existed in favor of the original owner continued in force to the extent that it could be successfully set up against a mortgage credit duly recorded in the registry of property. In some jurisdictions, when a homestead is sold by its owner, the purchaser acquires the property subject to all valid claims

or judgments rendered against the vendor, even where they could not have been made effective on the property if the owner had remained in its enjoyment and possession. In ther jurisdictions, however, it has been held that the exemption runs with the land, following the conveyance and protecting the property as if it continued to be the residence of the debtor. In Mississippi, in accordance with the old revised code, p. 529, sec. 281, as soon as a debtor abandoned his homestead by virtue of a sale to a third person, the property could be attached for the payment of an existing judgment against the debtor. In 1906, however, there was incorporated in the code a provision according to which, upon the sale of the property, the homestead does not answer for the debts contracted by its owner. In Illinois, in 1872, it was provided that when a homestead is transferred by its owner, such conveyance shall not subject the property to any encumbrance or lien to which it would not have been subject in the possession of its owner. In the State of Louisiana, the exemption granted to the owner of a homestead ceases when the property passes into other hands. In North Carolina, in 1905, a law was passed in which it was declared that when the homestead is sold and conveyed, the exemption ends and the property is subject to the payment of existing liens.

Our homestead law provides that the homestead shall be exempt from attachment, judgment, or forced sale, with the exception of taxes, the purchase price of the property, and the liability incurred for improvements made thereon. It might be that if these provisions were examined and analyzed by several courts, a uniform conclusion would not be reached. In examining the adjudicated cases it is observed that where the law exempts the homestead from a forced sale, the opinion prevails that a property which is surrendered by virtue of a sale answers for the liens existing thereon at the time of the conveyance. *Smith* v. *Brackett,* 36 Barb. (N. Y.) 571; *Allen* v. *Cook,* 26 Barb. (N. Y.) 374. It has been held, however, that where the exemption covers the judgment also,

the property is sold free from encumbrances and liens. We are perfectly aware of the differences established by certain courts, but their reasoning does not convince us. Our law does not deprive the head of the family, who can sell, of the right to encumber the property with the consent of his spouse, and when, by making use of this right, he mortgages what belongs to him, the lien is constituted immediately, even though it is held in abeyance as long as the homestead subsists under the protection of the exemption; but when the property is sold and abandoned, the dormant lien, which constitutes a notice to everyone, acquires force and vigor and may be made effective on the property in the possession of the purchaser. The exemption from a judgment and sale on execution does not, in our opinion, prevent the general principles in which the institution of homestead was inspired from its beginning, from being applied to a mortgage lien. Abiding by those principles, it seems to us that the doctrine upheld by the Supreme Court of Louisiana is the one most acceptable in this jurisdiction.

In the case of *Hebert* v. *Mayer*, 42 La. Ann. 839, 8 So. 590, the plaintiff, owner of 160 acres of land, had his homestead set apart and secure. He sold the property, which passed into the hands of several persons and was finally repurchased by him. Then the defendant obtained a judgment against the plaintiff and proceeded to attach the property. The plaintiff obtained an injunction against Mayer, restraining him from executing the judgment. The defendant appealed, and in deciding the question raised, the Supreme Court of Louisiana said:

"Under Article 219 of the Constitution, the homestead must be owned *bona fide* by the debtor and occupied by him. When any of the conditions requisite to the setting apart and registering a homestead to exempt it from seizure and sale cease to exist, the reason for the existence of the homestead ceases, and it is subject to seizure and sale. The judgments recorded against the debtor follow it into the hands of third parties. Civil, 3397; *Denis* v. *Gayle*, 40 Ann.

291, 4 South. 3. No higher evidence of the reasons why the homestead should cease to exist because it is no longer needed by the debtor to support those who were dependent upon him when it was set apart and registered, could be offered than the voluntary relinquishment or sale of the homestead by the debtor. The repurchase of the property by the debtor cannot revive the homestead. The conditions upon which it was originally granted ceased to exist when he sold it. New conditions must arise in order to entitle him to the homestead exemption. As this court said in the case of *Denis* v. *Gayles:* 'At the moment that the exemption ceased, the mortgage which had been only dormant, not extinct, became executory with its pristine force and vitality. Having severed all his connections with the property thus sold, Gayle could no longer extend over it a shield of protection in the shape of an exemption from seizure and sale which was personal to himself.' And in the instant case, if the judicial mortgage followed the homestead into the hands of the two vendees, it certainly attached to and covered it when it returned to the debtor. It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered and decreed that the injunction herein be dissolved . . .''

In the case of *Abbeville Rice Mill* v. *Shambaugh,* 115 La. 1047, 40 So. 453, 454, the same court said:

''We can see no possible basis for the claim of homestead. The property passed from McFarland to the purchaser burdened with the judicial mortgages inscribed against the vendor . . . Where the owner of a homestead sells the same, dormant judgments against the debtor are revived, and will, if duly recorded, follow the property into the hands of the vendee. Where the vendor repurchases the homestead, the exemption does not revive . . . If it were possible for the defendant, a married woman, to have acquired a homestead on the property, she necessarily would have taken it subject to plaintiff's prior judicial mortgage.''

In the Harvard Law Review, volume 29, p. 225, the case of *Gray* v. *Deal,* (Okl.), 151 Pac. 205, is cited, in which it was held that a homestead exempted from sale at public auction by the Constitution and alienated by its owner, conveyed ownership to the purchaser, free from encumbrances, and the following is added by way of commentary:

"There are two views as to the operation of a judgment lien on property exempt by statute from forced sale. In a few states it is held, as in the principal case, that the provision negatives the possibility of even a dormant lien so that the homestead may be conveyed free and clear. This result is sometimes reached by a construction based on other statutes indicating this to be the legislative intent. The majority view, however, is that the lien attaches, though it is held in abeyance by the exemption statute, which grants only a personal right of exemption to the owner of the homestead. Thus the lien becomes active when the land is alienated. The Oklahoma constitution provides that the homestead of the family shall be exempt from forced sale for the payment of debts. Williams, Const., sec. 303. But a statute declares that judgments of courts of record shall be liens on the real estate of the debtor. Gen. Stat. Okl., sec. 5192. A strict construction of the exemption would not prohibit the attachment of the lien but only the final process or forced sale. Whether a court will make such a construction, or follow the rule of the principal case, depends, in the absence of any evidence of legislative intent, on the general attitude toward the policy of the exemption acts in the particular jurisdiction."

We will not say that most courts hold that the lien may be enforced against the property, when, by the will of the owner who, with the consent of his spouse, sells and relinquishes it, it fails to be protected by the exemption, considering its personal character; but we do think that such view is the one most in harmony with the basic principles on which the institution of homestead rests.

The law does not seek to exempt the debtor from the payment of his obligations. The general rule is that the property of every debtor may be reached by his creditors in order to enforce their credits. The homestead is one of the exceptions to that rule so long as it preserves its characteristics and fulfills the purpose for which it was created, which is the protection of the family. The exemption, even though it applies to the property, is simply a personal privilege that the law grants to the debtor and to his widow and minor children after his death, which can not be conveyed with the property. The purpose of the law is to secure a home for

the family for reasons of public policy and not to shield the debtor from the claims of his creditors. If the property is sold and vacated, the characteristics of the homestead disappear, as regards the head of a family who is favored by the privilege. The sale and surrender of the premises constitute an abandonment which takes away from the property the character it had up to that time, in so far as it relates to the personal privilege of its former owner. The new owner, who may not be the head of a family, should not occupy a more advantageous position than that its vendor would have occupied, once the characteristics of the homestead disappeared. A homestead ceases to be such when the owner abandons it definitely. If he abandons it without selling it, the exemption disappears, and from that moment the property becomes subject to attachment and sale on execution. The same thing must happen when such abandonment occurs because the property was sold and vacated. A person who acquires a mortgaged property, duly recorded in the registry of property, is not at all prejudiced, as he has notice of the existence of the lien and knows what to expect in regard to his liability. The new owner, of course, can constitute his homestead and maintain it free from execution if he satisfies the liens existing at the time of his acquisition. The instant case is one where the vendor spouses would have been precluded from successfully setting up the exemption if they really applied for and obtained the loan of $500 for the construction of the dwelling house alleged to be a homestead.

The judgment appealed from must be affirmed.

Mr. Justice Hutchison concurs in the result.