Roque Santi Galleti y su esposa María García Reyes, y Julia García Reyes, demandantes y apelantes, *v.* Federal Land Bank of Baltimore y Abraham Sepúlveda, como Márshal de la Corte de Distrito de Ponce, demandados y apelados.

No. 6855.—*Sometido:* Enero 28, 1935. *Resuelto:* Febrero 15, 1935.

*V. Zayas Pizarro* y *J. Teissoniere,* abogados de los apelantes; *Frank Martínez* y *E. Campos del Toro,* abogados del Banco apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Antonio Miranda Berríos y su esposa Teresa de Jesús Rodríguez, siendo dueños de dos fincas radicadas en Villalba, solicitaron del Federal Land Bank of Baltimore, en 21 de enero de 1925, un préstamo de $5,000. Convino el banco en facilitar el préstamo en 24 de marzo de 1925, reduciéndolo a la suma de $3,700, y tomando como garantía hipotecaria las dos fincas mencionadas. Los prestatarios hicieron saber al banco que $500 eran para la construcción de una casa vivienda y $250 para cercas, reparaciones y mejoras. En mayo 4 de 1932 el banco demandado inició el cobro de su crédito por medio del procedimiento sumario autorizado por la Ley Hipotecaria. Este procedimiento fué dirigido contra Julia García Reyes, quien aparecía entonces como dueña de las fincas, habiéndose probado más tarde, a juicio de la corte inferior, que dichos inmuebles pertenecían a don Roque Santi y María García Reyes, por cuya razón el ejecutivo hipotecario continuó su tramitación contra los referidos esposos. Ambas fincas, una de noventa y tres cuerdas y otra de cuatro cuerdas y céntimos, fueron adjudicadas al banco demandado, que tomó posesión de la primera, quedando pendiente de posesión la finca de menor cabida. La corte inferior declaró sin lugar la demanda por entender entre otras razones que habiéndose constituído la hipoteca con anterioridad a la fecha de la compra de la finca por los demandantes, no hay derecho a acogerse a la exención autorizada por la ley en favor del derecho de *homestead.* El banco demandado estableció esta defensa y alegó además que en parte el dinero objeto del préstamo hipotecario fué dado por el banco referido, en cuanto a la suma de $500, para la construcción de la casa vivienda que ahora reclaman los demandantes, y en cuanto a los $250,

para mejoras en las dos fincas hipotecadas, las cuales responden solidariamente del pago de la hipoteca. La corte inferior resolvió que no habiendo sido partes los compradores en la solicitud original de préstamo, donde se hizo constar los fines a que serían dedicadas dichas cantidades, no quedan obligados a tener conocimiento del referido documento.

El primer motivo de error se basa en que la corte inferior declaró sin lugar la demanda por el hecho de haberse probado que en la fecha en que se constituyó el gravamen hipotecario, los reclamantes no habían constituído su hogar seguro. Se alega además que el tribunal *a quo* erró al no resolver que habiendo existido el *homestead* a favor del anterior dueño, Sr. Miranda, que no lo renunció al constituir la hipoteca a favor del Federal Land Bank of Baltimore, y habiéndole vendido a los reclamantes dicha finca con entrega de posesión, y siendo estos compradores cabezas de familia y personas hábiles para constituir un *homestead,* como en realidad lo constituyeron sobre dicha finca, tal *homestead* fué legalmente constituído por éstos en perjuicio del acreedor hipotecario, ya que no se hizo renuncia alguna ni por el deudor original ni por los compradores del referido derecho de *homestead*.

La cuestión fundamental a resolver en este caso es si los demandantes, que compraron la finca, la adquirieron libre de cargas o gravámenes por el hecho de tener en ella constituído su *homestead* los esposos vendedores. Es decir, si a pesar de haber sido esta finca vendida y desocupada por sus dueños y de haberse dado posesión material a los demandantes, continúa vigente la exención que cubre y ampara el hogar seguro del dueño, al extremo de poderse alegar con éxito favorable contra un crédito hipotecario debidamente inscrito en el registro de la propiedad. En algunas jurisdicciones, cuando se vende el *homestead* por el dueño del mismo, el comprador adquiere la propiedad sujeta a todas las reclamaciones válidas o sentencias dictadas contra el vendedor, aun cuando no hubiesen podido hacerse efectivas sobre la propie-

dad de haber permanecido el dueño en su disfrute y posesión. En otras jurisdicciones, sin embargo, se ha sostenido que la exención *runs with the land,* siguiendo a la transmisión y protegiendo la propiedad como si continuase siendo la residencia del deudor. En Mississippi, de acuerdo con el antiguo código revisado, pág. 529, artículo 281, tan pronto como un deudor abandonaba su *homestead* en virtud de una venta a un tercero, la propiedad podía ser ejecutada para el pago de una sentencia existente contra el deudor. En 1906, sin embargo, se adoptó en el código una disposición en virtud de la cual el *homestead* no responde de las deudas contraídas por su dueño, cuando se vende la propiedad. En Illinois se dispuso, en 1872, que cuando un *homestead* es traspasado por el dueño, este traspaso no sujetará la propiedad a ninguna carga o gravamen a que no hubiere estado sujeta en las manos de su dueño. En el estado de Louisiana la exención concedida al dueño del *homestead* cesa cuando la propiedad pasa a otras manos. En North Carolina se aprobó en 1905 una ley donde se declara que cuando se vende y trasmite el *homestead,* termina la exención, quedando la propiedad sujeta al pago de anteriores gravámenes.

Nuestra ley de *homestead* dispone que el hogar seguro estará exento de embargo, sentencia o ejecución, con excepción de las contribuciones, el valor de la compra de la propiedad y la responsabilidad incurrida por mejoras que se hicieren en la misma. Puede que si se examinan y analizan estas disposiciones por distintos tribunales no se llegue a una misma conclusión. Examinando las decisiones judiciales se observa que cuando la ley exime el *homestead* de ejecución (*forced sale*), prevalece el criterio de que la propiedad que se abandona en virtud de la venta responde de los gravámenes existentes contra la misma al tiempo de la trasmisión. *Smith* v. *Brackett,* 36 Barb. (N. Y.) 571; *Allen* v. *Cook,* 26 Barb. (N. Y.) 374. Se ha sostenido sin embargo, que cuando la exención cubre además la sentencia, la propiedad se vende libre de cargas y gravámenes. Nos damos perfecta cuenta de las

diferencias establecidas por ciertos tribunales, pero no nos convence su razonamiento. No priva nuestra ley al jefe de familia, que puede vender, del derecho de gravar la propiedad con el consentimiento de su cónyuge, y cuando haciendo uso de este derecho hipoteca lo que es suyo, el gravamen queda inmediatamente constituído aunque se mantenga en suspenso mientras subsiste el *homestead* bajo el amparo de la exención; pero cuando la finca se vende y abandona, el gravamen durmiente, que constituye noticia a todo el mundo, adquiere fuerza y vigor y puede hacerse efectivo sobre la propiedad en poder del comprador. La exención contra ejecución y sentencia no impide, a nuestro juicio, que se apliquen, con respecto a un gravamen hipotecario, los principios generales en que se inspiró desde su origen la institución de *homestead.* Ateniéndonos a esos principios, nos parece que la doctrina sustentada por la Corte Suprema de Louisiana es la más aceptable en esta jurisdicción.

En el caso de *Hebert* v. *Mayer,* 42 La. Ann. 839, 8 So. 590, el demandante, dueño de ciento sesenta acres de terreno, había separado e inscrito su *homestead.* Vendió la propiedad que pasó a manos de varias personas, volviendo después a adquirir el dominio de la misma. El demandado obtuvo una sentencia contra el demandante y procedió a ejecutar la propiedad. El demandante obtuvo un *injunction* contra Mayer, ordenándole que se abstuviera de ejecutar la sentencia. Apeló el demandado, y resolviendo la cuestión planteada la Corte Suprema de Louisiana se expresó así:

"Bajo el artículo 219 de la Constitución, el *homestead* debe ser poseído de buena fe por el deudor y ocupado por el mismo. Cuando cualquiera de las condiciones que se requieren para separar e inscribir el *homestead,* exceptuándolo de embargo y venta, deja de existir, la razón para la existencia del *homestead* cesa también y queda sujeto a embargo y venta. La sentencia registrada contra el deudor puede hacerse efectiva en las manos de terceras personas. Código Civil, artículo 3397; *Denis* v. *Gayle,* 40 La. Ann. 291, 4 South. Rep. 3. No puede ofrecerse una evidencia más vigorosa de que el *homestead* debe cesar, porque no lo necesita el deudor para sostener a

aquellas personas que dependían de él cuando fué separado e inscrito, que la que ofrece el voluntario abandono o venta de ese *homestead* por el deudor. La separación de la propiedad por este deudor no puede revivir el *homestead*. Las condiciones sobre las cuales fué originalmente concedido cesaron de existir cuando se vendió. Nuevas condiciones deben aparecer con el fin de darle derecho a la exención de *homestead*. Como dijo esta corte en el caso de Denis v. Gayle: 'Desde el momento que la exención cesa, la hipoteca, que solamente había estado durmiendo, sin extinguirse, vino a ser ejecutoria con toda su fuerza y vitalidad primitivas. Habiéndose desligado de toda conexión con la propiedad vendida, Gayle no pudo desde entonces tender sobre ella el escudo de la protección en la forma de una exención de embargo y venta que le era peculiarmente personal.' Y en el presente caso, si la hipoteca judicial siguió al *homestead* en las manos de los dos compradores, ciertamente continuó unida a la propiedad cuando el deudor original la adquirió nuevamente. Se ordena, por tanto, y decreta, que la sentencia apelada sea anulada y revocada, y que el decreto de *injunction* sea disuelto. . .''

En el de *Abbeville Rice Mill* v. *Shambaugh,* 115 La. 1047, 40 So. 453, dijo el mismo tribunal:

''No vemos una base posible para establecer la reclamación de *homestead*. La propiedad pasó de McFarland al comprador con el gravamen de las hipotecas inscritas contra el vendedor. Cuando el dueño del hogar seguro vende el mismo, reviven las sentencias durmientes contra el deudor y si han sido registradas siguen a la propiedad en las manos del comprador. Cuando el vendedor vuelve a obtener el *homestead,* la exención no revive. Si hubiese sido posible para la demandada, una mujer casada, haber adquirido el derecho de *homestead,* en la propiedad necesariamente lo hubiera tomado sujeto a las hipotecas judiciales anteriores del demandante.''

En *Harvard Law Review,* tomo 29, pág. 225, se cita el caso de *Gray* v. *Deal,* 151 Pac. 205 (Okl.), donde se resolvió que un hogar seguro exento de venta en pública subasta por la Constitución y enajenado por su dueño, trasmitió la propiedad libre de cargas al comprador y se añade, por vía de comentario, lo siguiente:

''Existen dos criterios respecto al efecto de un gravamen por sentencia sobre propiedad que por estatuto está exenta de una venta en pública subasta. En algunos estados se ha resuelto, como en el caso

citado, que la exención cubre un gravamen durmiente de tal suerte que el derecho de hogar seguro puede ser traspasado libre de toda carga. A veces se llega a este resultado mediante una interpretación que está basada en otros estatutos que indican que ésta es la intención legislativa. Sin embargo, el criterio de la mayoría es que el gravamen existe, aunque se mantiene en suspenso a virtud del estatuto, que sólo concede una exención personal al dueño del hogar seguro. Así, pues, el gravamen surge de nuevo al venderse la propiedad. La constitución de Oklahoma dispone que el hogar seguro de la familia estará exento de una subasta para el pago de deudas. Williams, Const. art. 303. Mas un estatuto dispone que las sentencias dictadas por cortes de registro gravarán los bienes inmuebles del deudor. Estatutos Generales de Oklahoma, art. 5192. Una interpretación estricta de la exención no prohibiría la existencia del gravamen, sino solamente el procedimiento final de la subasta. Si una corte dará tal interpretación o seguirá la regla del caso antes citado, depende, en ausencia de prueba respecto a la intención de la legislatura, de la actitud general que se tenga en materia de exención en la jurisdicción de que se trate.''

No diremos nosotros que la mayoría de los tribunales sostiene que el gravamen puede hacerse efectivo contra la propiedad, cuando por la voluntad del dueño que la vende y abandona, con el consentimiento de su cónyuge, deja de estar amparada por la exención, dado el carácter personal de la misma; pero sí creemos que éste es el criterio que más se ajusta a los principios básicos en que descansa la institución de *homestead.*

No persigue la ley el propósito de eximir al deudor del pago de sus obligaciones. La regla general es que los bienes de todo deudor pueden ser alcanzados por sus acreedores para hacer efectivos sus créditos. El *homestead* es una de las excepciones a la regla, mientras conserve sus características y cumpla el propósito para que fué creado, que es la protección de la familia. La exención, aunque recae sobre la finca, es un simple privilegio personal que la ley asegura al deudor y a su viuda y sus hijos menores de edad después de su muerte, que no puede ser trasmitido con la propiedad. El espíritu de la ley es asegurar un hogar a la familia por

razones de conveniencia pública, y no proteger al deudor contra las reclamaciones de sus acreedores. Si la propiedad se vende y desocupa, las características del *homestead* desaparecen en cuanto al jefe de familia favorecido por el privilegio. La venta y desocupación definitiva constituyen un abandono que despoja a la propiedad del carácter que tuvo hasta entonces en lo que se relaciona con el privilegio personal de su dueño anterior. El nuevo dueño, que puede que no sea jefe de familia, no debe ocupar una posición más ventajosa que la que hubiese ocupado su vendedor una vez desaparecidas las características del *homestead*. El hogar seguro deja de serlo cuando el dueño lo abandona definitivamente. Si lo abandona sin venderlo, desaparece la exención, quedando desde este momento sujeto a embargo y ejecución. Lo mismo debe suceder cuando este abandono ocurre por haberse vendido y desocupado la propiedad. El que adquiere una finca hipotecada, debidamente inscrita en el registro de la propiedad, no sufre perjuicio alguno, porque conoce la existencia del gravamen y sabe a qué atenerse en cuanto a su responsabilidad. El nuevo dueño, desde luego, puede constituir su *homestead* y mantenerlo libre de ejecución si cubre los gravámenes existentes al tiempo de la adquisición. El presente es un caso en que los esposos vendedores hubiesen estado impedidos de establecer con éxito favorable la exención si en realidad pidieron y obtuvieron una cantidad de $500 para la construcción de la casa vivienda que se alega como *homestead*.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Hutchison está conforme con el resultado.