379 F.2d 682
 Bobby MANSELL and Delores K. Mansell, Appellants,
v.
V. H. CARROLL, Trustee in Bankruptcy of Bobby Howard Jones, d/b/a Gate 3 Furniture Company, Appellee.
V. H. CARROLL, Trustee in Bankruptcy of Bobby Howard Jones, d/b/a Gate 3 Furniture Company, Cross-Appellant,
v.
Bobby MANSELL and Delores K. Mansell, Cross-Appellees.
 Nos. 8838-8841.
 United States Court of Appeals Tenth Circuit.
 June 23, 1967.
 
 Submitted on briefs by Ralph W. Newcombe of Newcombe, Redman & Doolin, Lawton, Okl., for appellants and cross-appellees.
 Submitted on brief by Norman E. Reynolds of Reynolds & Ridings, Oklahoma City, Okl., for appellee and cross-appellant.
 Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 Appellee, as trustee in bankruptcy, brought this equitable plenary action against appellants to set aside a conveyance and mortgage of real property as fraudulent and preferential under the Bankruptcy Act and the Oklahoma Statutes. Appellants have appealed from an adverse judgment setting aside the conveyance and mortgage and appellee has cross-appealed from the trial court's refusal to permit him to recover damages for the use and possession of the property by appellants.
 
 
 2
 The case was submitted after both parties had filed a motion for summary judgment and it had been agreed that all affidavits, exhibits, depositions and interrogatories and answers thereto on file should be considered by the court in arriving at a decision. The introduction of any other evidence was waived. Apparently, the trial court disregarded the motions for summary judgment and on the basis of the agreed record proceeded to make his own findings of fact and resultant conclusions of law.
 
 
 3
 At the threshold, the most important consideration is the court's findings of fact. In summary the court found:
 
 
 4
 On February 9, 1962, the bankrupt, Jones, was the owner of three adjacent pieces of real property, located in the city of Lawton, Oklahoma, known as 1601, 1603 and 1605 Taft Street. On that date he conveyed all of this property, by quitclaim deed, to his wife, Betty Jean, without consideration. Jones was at that time insolvent. He and his wife were then living in a dwelling at 1603, one of the properties conveyed. Three days later and on February 12, Jones borrowed $7,000.00 from the defendants[1] (below) and Betty Jean gave them a warranty deed, intended as a security device to cover the loan, conveying the property at 1603. This deed was not filed of record until May 3, 1962, and was then not accompanied by any instrument explaining it to be a mortgage as required by an Oklahoma statute.[2] At the same time the warranty deed was delivered by Betty Jean, both husband and wife delivered to Mansells a mortgage instrument securing the loan but this instrument was, at no time, filed of record.
 
 
 5
 On April 28, 1962, bankrupt and family moved their place of residence from 1603 to 1605 Taft. Betty Jean, on May 2, filed a divorce action against Jones and on June 4, 1962, was granted a divorce decree wherein she was awarded the three properties, 1601, 1603 and 1605 Taft. On June 8, 1962, an involuntary petition in bankruptcy was filed against Jones and on June 18 he was adjudged a bankrupt.
 
 
 6
 The trial court properly took judicial notice of another civil suit concluded in that court, wherein this same trustee in bankruptcy sought to recover for creditors the property at 1605 Taft. Therein a consent judgment was entered and that property was found to be the last homestead occupied by Jones and his wife and the same was set apart as the exempt property of Mrs. Jones and beyond the reach of the creditors.
 
 
 7
 From these basic facts and all of the other evidence in the agreed record, the trial court found: That all of the transactions were a part of "a plan and scheme involving all of said parties to place properties of the bankrupt who was then insolvent beyond the reach of and to the detriment of the bankrupt's creditors * * *"; "that the wife * * * was merely a conduit or a sham or straw woman, in effect the alter ego of the bankrupt; that the transaction was actually between the bankrupt and the defendants, and while a fair consideration may have passed * * *, the transfers were made in bad faith and with actual intent on the part of all concerned to hinder, delay and defraud existing and future creditors of the bankrupt"; that the transactions "constituted a preferential transfer under Sections 60a(1) and (7) of the [Bankruptcy] Act"; and, that the transactions "were both fraudulent under Sections 67d(2) (d) and 70a(4) of the [Bankruptcy] Act."
 
 
 8
 Appellants' heavy reliance upon Rutledge v. Johansen, 10 Cir., 270 F.2d 881, should be first considered. There this court approved a conveyance of real property for an antecedent debt within four months prior to the grantor being adjudicated a bankrupt. All of the requirements of a voidable preference under Section 60a and b of the Bankruptcy Act were present but the court held that it was a nonvoidable preference because the property transferred was exempt property. We clearly distinguish that case from our present situation in several respects. That transfer was free of fraud, no other claim of a homestead exemption was made in the bankruptcy proceeding, the transfer was completed while the property remained the homestead of the grantor, and most important, the bankrupt was permitted to do prior to bankruptcy only what he could have done afterward. We find no comfort for appellants in the Rutledge decision.
 
 
 9
 On the other hand, Rutledge enunciated several generally recognized legal principles applicable here, although the ultimate holding in that case may be said to be an exception, which is not applicable here. Exemption rights are determinable as of the time of the bankruptcy filing. It is the duty of the trustee to set apart the bankrupt's legal exemptions, if claimed. The bankrupt must claim those exemptions and quoting Gardner v. Johnson, 9 Cir., 195 F.2d 717, 720, Rutledge says "affirmative steps must be taken, both by the bankrupt and by those administering the bankruptcy estate, before exempt property can be allowed to the bankrupt."
 
 
 10
 In a bankruptcy proceeding the determination of what property is exempt is made as of the date of filing and there can be only one homestead insofar as the bankrupt is concerned. As pointed out by the trial judge, if appellants' argument is accepted, a bankrupt could in effect claim any number of previously transferred properties as exempt. This is not within any reasonable contemplation of the Bankruptcy Act. In this bankruptcy proceeding a homestead exemption as to 1605 property has been allowed as the result of another plenary suit, we are bound by that adjudication and appellants have no capacity to collaterally attack it here. Thus, the February 9 transfer of the 1603 property from Jones to his wife may clearly be set aside pursuant to Sections 60(1) and (7), 67(2) (d) and 70a (4) of the Bankruptcy Act. By explicit findings of fact the trial judge determined that the conveyance should be set aside and we agree. The findings are amply supported by the evidence.
 
 
 11
 Appellants' argument is premised upon the claimed validity of the conveyance by the quitclaim deed from bankrupt to his wife. They say that conveyance involved the family homestead, divested the bankrupt of any interest in the property, and because it was the homestead, appellee trustee cannot now claim such property for the estate. They further argue that the subsequent conveyance of this homestead property by Betty Jean to them is beyond the reach of the trustee because the bankrupt had no interest in the property at the time of that conveyance. It is an ingenious argument but when pierced by the long arm of equity and the law, it is lacking in merit.
 
 
 12
 We are mindful of the Oklahoma cases holding, in effect, that a creditor of the owner of a homestead generally cannot question a homestead conveyance.[3] That is, wisely, the general rule of law, but facts, as found here, present much more than the mere conveyance of a homestead. They reveal a plan and a scheme on the part of Jones, the bankrupt, his wife, the grantee in the deed, and appellants to defraud. The conveyance was merely a part and parcel of the whole scheme and a vehicle used to eventually get the property into the hands of appellants for a fraudulent purpose. Appellants stress the fact that the conveyance was by Betty Jean but ignore the fact that it was actually made to secure an indebtedness from the bankrupt to appellants. They also ignore the finding of the court that Betty Jean was "only a straw woman" or Jones' "alter ego" in the transaction.
 
 
 13
 In substance, appellants would have us isolate the two conveyances from the series of transactions involved to determine their validity. In effect, they seek to insulate these two transactions from the charge of fraud. The trial judge did not accept this argument and we reject it. In order to make an equitable determination of the case, all of the pertinent transactions must be scrutinized, as the trial judge did. By such a method of consideration he made broad and sweeping findings of fact, which need not be reiterated here, but which tied all of the pertinent transactions together, each as a part of a broad scheme and plan to perpetrate a fraud. The findings determined that the bankrupt, his wife and appellants were active participants in the plan and scheme to defraud and then, with the unquestioned power of a court of equity, the trial judge pierced the formalities of all of the transactions in question and decreed that appellants' title to the fraudulently acquired property should be vested in appellee trustee.
 
 
 14
 The homestead exemption is for the benefit of the family and the protection of the family home. It was never intended as a device to effectuate frauds and a court of equity should not countenance any wrongful use of the homestead right. This is an equitable action, and the court, with substantial evidentiary support, has found that all of the transactions pertinent here were a part of a plan and scheme to hinder, delay and defraud creditors. Under the circumstances of this case, we do not believe appellants, who have been found guilty of fraud, are in any position to come into a court of equity and assert another's homestead right as a defense for their own wrongful acts. At no time did the bankrupt or his wife make any assertion of homestead rights to the real property here involved.
 
 
 15
 There are other legal reasons why appellants' claim to a valid interest in this real property must be rejected. If we did conclude that the homestead argument is otherwise valid, the provisions of the Oklahoma statutes and Constitution invalidate the February 12 conveyance from the bankrupt's wife to appellants.[4] They require that both the owner of a homestead and his or her spouse sign any deed of conveyance of the same. The bankrupt did not join in this conveyance and appellants' claim under it is invalid. Under the factual findings by the trial court we also believe Section 60a (2) of the Bankruptcy Act[5] is applicable here. That section provides the guidelines for determining when a transfer of property is perfected or completed. That statute applied to the facts here defeats appellants' claim of a lien upon the 1603 property. The lien here is a mortgage lien and the mortgage instrument was never recorded and thus was never perfected. The deed, which was intended only as a mortgage was not recorded until May 3, 1962, after the property had lost all semblance of a homestead. Then, as required by the Oklahoma statutes,[6] the deed, when filed, was not accompanied by the mortgage instrument or any other writing explaining the true nature of the transaction. Thus the conveyance, as a mortgage lien, was never perfected or completed. Appellants seek to avoid the impact of this statute by arguing that the deed of conveyance was not from the bankrupt but from his wife alone. They again would ignore the express finding of the trial court that the wife "was merely a conduit or a sham or straw woman, in effect the alter ego of the bankrupt."
 
 
 16
 The trustee, as cross-appellant asks us, in the event of an affirmance, to determine his right to the rents and profits from the property in dispute during the period of this litigation. He did not seek this relief in the trial court by his complaint but did raise the issue in a motion for a new trial. The trial judge stated in his order overruling this motion "The case was submitted to the Court on the pleadings, stipulations and certain discovery and without an evidentiary hearing. No mention was made of the plaintiff seeking recovery for the use of the real estate involved herein in the pre-trial order on file in this case. The Court did not and does not consider in these circumstances that the value of the use of the real estate involved was an issue, nor sought by the pleadings nor was submitted to the Court for determination by the parties to the case." After reading the record, we accept the position of the trial court on this issue. Undoubtedly, that court could have reopened the case on the trustee's motion, but within the exercise of its discretion, the request was refused. We will not disturb the judgment in that respect.
 
 
 17
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 It should be noted that this loan agreement obligated the bankrupt, Jones, to repay the sum of $8,680.00 to Mansells within six months and was plainly a usurious transaction under 15 Okl.St.Ann. §§ 266 and 267
 
 
 [2]
 46 Okl.St.Ann. § 8
 
 
 [3]
 See Japp v. Sapulpa State Bank, 90 Okl. 56, 215 P. 1059; Dreyfus v. Dickason, 176 Okl. 477, 56 P.2d 881; Oklahoma State Bank v. Van Hassel, 189 Okl. 48, 114 P.2d 912; Rawleigh v. Groseclose, 174 Okl. 193, 49 P.2d 1085
 
 
 [4]
 Article 12, § 2, Oklahoma Constitution:
 "* * * nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law * * *."
 
 
 [16]
 Okl.Stat.Ann. § 4:
 "* * * [n]o deed, mortgage or contract relating to the homestead exempt by law * * * shall be valid unless in writing and subscribed by both husband and wife, * * *."
 
 
 [5]
 This statute provides as follows:
 "* * * A transfer of real property shall be deemed to have been made or suffered when it became so far perfected that no subsequent bona fide purchase from the debtor could create rights in such property superior to the rights of the transferee. * * *"
 
 
 [6]
 46 Okl.St.Ann. § 8 reads as follows:
 "Every grant of real property, or of any estate therein, which appears by any other writing, to be intended as a mortgage within the meaning of this chapter, must be recorded as a mortgage; and if such grant and other writing explanatory of its true character are not recorded together at the same time and place, the grantee can derive no benefit from such record."
 
 
 [46]
 Okl.St.Ann. § 10 reads as follows:
 "Every instrument explanatory of any deed or other writing purporting to be a conveyance but intended to be defeasible or as security for the payment of money, shall be deemed a part thereof, and must be filed and recorded therewith; and unless such instruments are so filed and recorded together, they and each of them shall have no other effect than an unrecorded mortgage, and the recording of the principal instrument shall secure no rights to the holder thereof."